IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| IHEARTMEDIA, INC., *et al.*,[1] | Case No. 18-31274 (MI) |
| Debtors. | (Jointly Administered) |

**THE TERM LOAN/PGN GROUP'S EMERGENCY MOTION TO COMPEL LIONTREE ADVISORS LLC TO PRODUCE DOCUMENTS CONCERNING THE PENDING <u>LIONTREE RETENTION APPLICATION</u>**

The Term Loan/PGN Group[2] submits this Motion to Compel, seeking production of documents that are squarely relevant to the Debtors' proposed retention of LionTree Advisors LLC [ECF No. 569] ("LionTree") (the "LionTree Application") and the Term Loan/PGN Group's objections to the Application.

This Motion addresses limited categories of documents that are directly germane to the assertions in the LionTree Application and supporting declaration, yet LionTree refuses to produce responsive documents. The documents at issue relate to the nature and extent of efforts (or lack of efforts) that have been or are proposed to be provided by LionTree and are, thus, relevant to the inquiry before the Court—the reasonableness of the terms and conditions proposed in the LionTree

---

[1] Due to the large number of Debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided. A complete list of such information may be obtained on the website www.primeclerk.com/iheartmedia. The location of Debtor iHeart Media, Inc.'s principal place of business and the Debtor's service address is: 20880 Stone Oak Parkway, San Antonio, Texas 78258.

[2] The Term Loan/PGN Group consists of certain beneficial holders or investment advisors or managers for certain beneficial holders of (a) term loans under that certain Credit Agreement dated May 13, 2008, as amended and restated among iHeartCommunications, Inc. (the "Company"), Citibank, N.A. as Administrative Agent, Swing Line Lender and L/C Issuer, and certain lenders that made term loans thereunder (the "Term Loans") and (b) Priority Guarantee Notes issued by the Company (the "PGNs") as identified in the Verified Statement of Loewinsohn Flegle Deary Simon LLP Pursuant to Bankruptcy Rule 2019 to be filed.

Application.  Indeed, LionTree and the Debtors have put these efforts squarely before the Court in the declaration supporting the LionTree Application when LionTree asserted:

> LionTree began working with the Debtors' senior management and other stakeholders in the Fall of 2017 regarding a potential equity investment initially by Liberty Media Corporation and its affiliates and subsequently by another interested party …As such, the Debtors seek to retain LionTree … to maintain the momentum built with Liberty, the Interested Party, and any other potential Equity Transaction counterparties …

LionTree Application, Declaration of Ehren Stenzler, Ex. C ¶¶ 5-6.

The Court should compel LionTree to produce the documents described below.

## REASON FOR EMERGENCY

The LionTree Application is set for hearing on May 30, 2018 at 10:30 a.m.  Depositions of witnesses the Debtors, including a representative of LionTree, intend to call to testify at the hearing are scheduled to take place next week on May 22-24, 2018.  Given the importance of the requested documents, the limited nature of the requests, and upcoming deposition schedule, the Term Loan/PGN Group requests that the Court set a hearing not later than 10:00 a.m. on Monday, May 21, 2018.  In the alternative and if it is more convenient for the Court, the Term Loan/PGN Group requests that the Court overrule LionTree's objections and grant this Motion without a hearing. *See In re Texas Bumper Exch., Inc.*, 333 B.R. 135, 139 (Bankr. W.D. Tex. 2005) (holding that Rule 37(a) does not require a court to hold a hearing before granting a motion to compel).[3]

---

[3] "The rules do *not* require a hearing to be held in order for a court to pass on the legitimacy of objections to discovery. A court could, if it so chose, rule on the moving papers alone with respect to a Rule 37(a) motion to compel.  A party seeking to resist discovery must make its best case for doing so in its objections to the discovery itself.  If those objections are not facially sustainable, then the court is permitted to overrule them, and to order compliance, as the court did here. The defendant's objections to interrogatories, requests for production, and requests for admission were not facially sustainable. If defendant here intended to present his first, best case for resisting discovery at a hearing on a motion to compel, rather than clearly and facially in his responses to discovery, then movant failed to heed the clear warnings in the rules themselves—the objections must be clear and specific, such that they are facially sustainable, failing which they may be overruled, without further hearing." *Id.* (internal citations omitted).

**FACTUAL BACKGROUND OF DISCOVERY REQUESTED**

The Term Loan/Group served its Request for Production of Documents to LionTree on May 10, 2018 ("RFP") (attached as "Exhibit A").  LionTree served responses to the RFP (attached as "Exhibit B"), asserting numerous boilerplate objections, including eight general objections that are incorporated into the response to every request.[4]

The Term Loan/Group conducted a telephone conference with counsel for LionTree and the Official Committee of Unsecured Creditors ("UCC") on May 17, 2018.  During the conference, counsel for the Term Loan/PGN Group and UCC agreed to significantly narrow the documents requested in RFP numbers 3-6.  The parties also determined that LionTree had withheld and refused to provide internal communications and documents (i.e., communications not sent to the Debtors) in response to RFP numbers 7-10.  Counsel for LionTree said it would consider the request to produce internal communications.

In an email the following day, counsel for LionTree said it was still considering the narrowed RFP number 6 and would provide an answer by 6:00 p.m. May 18, 2018.  Email from Harrison Polans, May 18, 2018 at 11:57 a.m. (attached as "Exhibit C").  Counsel for LionTree has since confirmed that it will stand on its objections and refuse to produce any responsive documents.  Email from Harrison Polans, May 18, 2018 at 4:54 p.m (attached as "Exhibit D").  With respect to the internal communications requested in RFP numbers 7-10, counsel for LionTree confirmed that it "stands on its objection that those documents are not relevant to the objections at hand."  *Id.* Counsel for LionTree also confirmed that it would not produce documents with respect to RFP numbers 3-5 because it "believes that these materials are wholly irrelevant to the retention

---

[4] Boilerplate objections, especially when asserted as general objections at the beginning of a discovery response, violate the letter and spirit of Rule 26.  *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014).  The Court should deem these objections waived (with the exception of attorney-client privilege and work-product privilege) and decline to consider them.  *See id.*

application and the objections at hand." *Id.* The email stated that "LionTree also will not, as you proposed, agree not to offer evidence or testimony about the services LionTree provided to the Debtors date [sic] or in the future, including LionTree's marketing efforts or services." *Id.*

## BURDEN OF PROOF

A party seeking discovery may move for an order compelling production of documents that are within the scope of discovery. Fed. R. Civ. P. 37; *TNA Australia Pty Ltd. v. PPM Techs.*, No. 3:17-CV-642-M, 2018 WL 2010277, at *8 (N.D. Tex. Apr. 30, 2018). The party resisting discovery has the burden to specifically object to the requested discovery and show that the discovery does not fall within Rule 26(b)(1)'s scope of relevance, fails the proportionality calculation, or is otherwise objectionable. *Id.* at *11. If the resisting party claims that the request is overbroad or unduly burdensome, it must present an affidavit or other evidentiary proof "revealing the nature of the burden." *Id.* "A party resisting discovery is swimming against a strong upstream policy current. The policy underlying the discovery rules encourages *more* rather than less discovery, and discourages obstructionist tactics." *Texas Bumper*, 333 B.R. at 139-40.

## ARGUMENTS AND AUTHORITIES

To succeed on the LionTree Application, the Debtors bear the burden of proving that the terms and conditions of their proposed section 328(a) retention of LionTree are reasonable. *In re Energy Partners*, 409 B.R. 211, 226 (Bankr. S.D. Tex. 2009). In evaluating the reasonableness of the retention, this Court should ultimately look to a number of factors, including,

> (1) Whether the terms of an engagement agreement reflect normal business terms in the marketplace … (3) Whether the retention, as proposed, is in the best interest of the estate … (5) Whether, given the size, circumstances and posture of the case, the amount of the retainer is itself reasonable, including whether the retainer provides the appropriate level of risk minimization, especially in light of the existence of other risk-minimizing devices, such as an administrative order and/or carve-out.

*Id.* The requests detailed below seek information concerning these factors and are, thus, relevant to the inquiry before the Court.

The Term Loan/PGN Group has attempted to break the requests down into two categories—one related to the scope of services LionTree provided and will allegedly provide and the other related to internal communications that LionTree refuses to produce notwithstanding that it agreed to produce communications with the Debtor on all of these same categories. The Term Loan/PGN Group will address both of these categories by detailing the original requests, the narrower request proposed during the discovery conference (if applicable), the objections made by the LionTree, and the reasons the documents should be produced.

A. **Scope of Services**

| Original Request | Narrowed Request | Objections |
|---|---|---|
| 3. All documents and Communications relating to the work to be performed or services to be provided by LionTree to the Debtors, including but not limited to any proposals, presentations, or analyses provided to or received by the Debtors in connection with the negotiation of the Engagement Letter or any other retention letter between the Debtors and LionTree. | Final or formal proposals, presentations, and analyses that LionTree prepared for or presented to the Debtors Debtor's management or board of directors (including all committees or subcommittees thereof) in connection with the negotiation of the Engagement Letter or any other retention letter between the Debtors and LionTree. | 1. Vague.<br>2. Overbroad.<br>3. Unduly burdensome.<br>4. Requests materials that are not relevant to any party's claims or defenses.<br>5. Is not proportional to the needs of the case.<br>6. General objections. |

| | | |
|---|---|---|
| 4. All documents and Communications relating to any marketing efforts or any other services previously or currently provided by or planned to be provided by LionTree relating to any potential Equity Transaction, as defined in the Application. | Final or formal proposals, presentations, and analyses that LionTree prepared for or presented to the Debtors Debtor's management or board of directors (including all committees or subcommittees thereof) relating to any marketing efforts or any other services previously or currently provided by or planned to be provided by LionTree relating to any potential Equity Transaction, as defined in the Application. | 1. Vague.<br>2. Overbroad.<br>3. Unduly burdensome.<br>4. Requests materials that are not relevant to any party's claims or defenses.<br>5. Is not proportional to the needs of the case.<br>6. General objections. |
| 5. All Documents and Communications relating to or concerning LionTree's or any of its affiliates' prior or current business relationships between [sic] with Liberty, including but not limited to any engagement letters between LionTree and any of its affiliates. | Final engagement letters, contracts, or agreements between Liberty and its affiliates, on the one hand, and LionTree, on the other hand, from 2015 to the present. | 1. Vague.<br>2. Overbroad.<br>3. Unduly burdensome.<br>4. Requests materials that are not relevant to any party's claims or defenses.<br>5. Is not proportional to the needs of the case.<br>6. General objections. |
| 6. All Documents and Communications between any of the Debtors and LionTree relating to or concerning the Liberty Proposal.[5] | Final presentations, analyses, proposals, or term sheets relating to the Liberty Proposal that LionTree prepared and presented to the Debtors' management or board (including all committees or subcommittees thereof) prior to the petition being filed. | 1. Vague.<br>2. Overbroad.<br>3. Unduly burdensome.<br>4. Requests materials that are not relevant to any party's claims or defenses.<br>5. Is not proportional to the needs of the case.<br>6. General objections. |

---

[5] The Liberty Proposal is defined in the LionTree Application as the proposal submitted by Liberty Media Corporation ("Liberty") in or around December 2017. LionTree Application ¶ 10. The Term Loan/PGN Group incorporated this same definition by reference in its RFP and Supplemental RFP.

These requests, particularly as narrowed, are appropriately focused on the services that have been and will allegedly be provided by LionTree. In particular, RFP number 6 relates to materials presented to the Debtors concerning the Liberty Proposal. The Liberty Proposal is a central focus of the LionTree Application. LionTree Application ¶ 10-11. For its part, LionTree stands to earn a significant capital transaction fee under its engagement letter—on top of Moelis' fee—if the Liberty Proposal or a similar equity offering closes. LionTree Application ¶ 16(a); Moelis Application ¶ 16(c). If the Debtors or LionTree intend to present evidence, testimony, or arguments at the hearing concerning LionTree's prior efforts relating to any possible equity transaction involving Liberty or another investor, the Term Loan/PGN Group is entitled to documentary evidence of the services already provided and the work proposed to be done in that regard. And yet, in a classic heads-I-win-tails-you-lose move, LionTree claims that it will not produce the documents but that it nonetheless reserves the right to present evidence and testimony on this topic at the hearing. Exhibit C. If LionTree insists on dodging reasonable discovery into their pre- and post-Petition efforts, the Court should prevent them and the Debtors from introducing testimony or documentary evidence on this issue at the hearing.

As to LionTree's other objections, the requests are focused on what should amount to only a handful of *final* materials. The Term Loan/PGN Group is not requesting all drafts or communications regarding such materials—although that material would be relevant and discoverable. The narrowed requests are, thus, reasonably limited and should place little burden on LionTree. But even if there was some burden on LionTree to locate the material, such burden is certainly not undue and is outweighed by the size of the fees sought by LionTree, which could be over $17 million for the Liberty Proposal alone. Asking LionTree to produce limited documents concerning the services it has provided and will allegedly provide is not too much to ask.

**B.     Internal Communications**

| Request | Objections |
|---|---|
| 7. All Documents and Communications reflecting any compensation, fees, or other consideration to be paid to LionTree for its work in connection with the Bankruptcy Cases or any related proceeding, including but not limited to any proposals, presentations, or analyses provided to or received by Debtors in conjunction with the negotiations of LionTree's retention. | 1. Vague.<br>2. Overbroad.<br>3. Unduly burdensome.<br>4. Requests materials that are not relevant to any party's claims or defenses.<br>5. Is not proportional to the needs of the case.<br>6. General objections. |
| 8. All Documents and Communications LionTree considered or relied on in assessing the Fee Structure and the terms of the Engagement Letter, including without limitation all Documents and Information LionTree considered or relied upon in determining that the Fee Structure and the terms of the Engagement Letter are fair, reasonable, and/or conform to market standards for such fees. | 1. Vague.<br>2. Overbroad.<br>3. Unduly burdensome.<br>4. Requests materials that are not relevant to any party's claims or defenses.<br>5. Is not proportional to the needs of the case.<br>6. General objections. |
| 9. All Documents and Communications reflecting any analysis performed regarding the Fee Structure, including but not limited to any comparable engagement fees reviewed. | 1. Vague.<br>2. Overbroad.<br>3. Unduly burdensome.<br>4. Requests materials that are not relevant to any party's claims or defenses.<br>5. Is not proportional to the needs of the case.<br>6. General objections. |

| | |
|---|---|
| 10. All Documents and Communications relating to any discussion or negotiation of the Fee Structure or the Engagement Letter. | 1. Vague.<br>2. Overbroad.<br>3. Unduly burdensome.<br>4. Requests materials that are not relevant to any party's claims or defenses.<br>5. Is not proportional to the needs of the case.<br>6. General objections. |

The requests go to the reasonableness of the fee structure proposed by the Debtors and LionTree—which is central issue the Court will determine with respect to the LionTree Application. Notably, LionTree has agreed to produce, and thereby acknowledges the relevance of, these documents and communications for each of these categories to the extent such communications were with or documents were shared with the Debtors. But, for some reason, it does not believe that its own internal analysis of its fee structure is relevant. Nothing could be further from the truth. If, for instance, LionTree has internal comparable transactions that it considered but did not present to the Debtors, the Term Loan/PGN Group has a right to discover those and present them at the hearing. Moreover, these requests are proportional to the needs of the case and are not overbroad or unduly burdensome. In any event, LionTree bears the burden on these issues. The Court should compel LionTree to produce all internal communications pertaining to these four requests.

## RELIEF REQUESTED

The Term Loan/PGN Group respectfully requests that Court compel LionTree to produce the documents requested in this Motion by no later than May 21, 2018 at 5:00 p.m. or at some other reasonable time as the Court determines in light of the expedited schedule.

Dated: May 18, 2018 Respectfully submitted,

/s/ *Tyler M. Simpson*
Craig F. Simon
craigs@LFDSlaw.com
Texas State Bar No. 00784968
Daniel P. Winikka
danw@LFDSlaw.com
Texas State Bar No. 00794873
Tyler M. Simpson
tylers@LFDSlaw.com
Texas State Bar No. 24066091
**LOEWINSOHN FLEGLE DEARY SIMON LLP**
12377 Merit Drive, Suite 900
Dallas, Texas 75251
214-572-1700 Telephone
214-572-1717 Facsimile

CONFLICTS COUNSEL FOR THE TERM LOAN/PGN GROUP

## CERTIFICATE OF CONFERENCE

I certify that on May 17, 2018, I conferred with Israel David, counsel for LionTree, and was unable to reach an agreement on the requested relief. My efforts to confer are detailed in the Motion above.

*/s/ Tyler M. Simpson*
Craig F. Simon

## CERTIFICATE OF SERVICE

I certify that on May 18, 2018, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Tyler M. Simpson*
Tyler M. Simpson