**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| IHEARTMEDIA, INC., *et al.*,[1] | § | Case No. 18-31274 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**DEBTORS' OBJECTION TO JOHN**
**VOSKUHL'S LETTER REQUESTING RECONSIDERATION**
**OF THE ORDER AUTHORIZING THE DEBTORS TO REDACT**
**INFORMATION IN RESPECT OF INDIVIDUAL EMPLOYEES AND CREDITORS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully submit this objection (this "Objection") to the letter dated as of May 29, 2018 [Docket No. 844] (the "Letter") filed by Mr. John Voskuhl,[2] a reporter for Bloomberg News ("Bloomberg"). In support of this Objection, the Debtors respectfully state as follows:

**Introduction**

1.     On March 15, 2018, the Debtors filed their *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidated List of Creditors and a Consolidated List of the 30 Largest Unsecured Creditors, (II) Authorizing the Debtors to Redact Certain Personal Identification Information, (III) Approving the Form and Manner of Notifying Creditors of the Commencement of These Chapter 11 Cases, and (IV) Granting Related Relief*

---

[1]     Due to the large number of Debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/iheartmedia.  The location of Debtor iHeartMedia, Inc.'s principal place of business and the Debtors' service address is: 20880 Stone Oak Parkway, San Antonio, Texas 78258.

[2]     It is unclear whether Mr. Voskuhl is writing on his own behalf or on behalf of Bloomberg.  If on behalf of Bloomberg, the Letter may not comply with rule 1002-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), which requires that corporate or partnership parties be represented by counsel at all times.  In any event, no motion or other pleading has been filed by any attorneys purporting to represent Bloomberg.

*Filed by Debtor iHeartMedia, Inc.* [Docket No. 5].  On March 15, 2018, the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") entered the *Order (I) Authorizing the Debtors to File a Consolidated List of Creditors and a Consolidated List of the 30 Largest Unsecured Creditors, (II) Authorizing the Debtors to Redact Certain Personal Identification Information, (III) Approving the Form and Manner of Notifying Creditors of the Commencement of These Chapter 11 Cases, and (IV) Granting Related Relief* [Docket No. 114]. Among other things, the Order grants the Debtors authority to redact information in respect of individual employees and customers listed on the Creditor Matrix or similar document filed with the court, provided that the Debtors will, upon request, provide an unredacted version of the creditor matrix to the Court, the United States Trustee for the Southern District of Texas (the "<u>U.S. Trustee</u>"), and any statutory committee appointed in these chapter 11 cases.

2.     The relevant facts remain substantially unchanged since the entry of the Order.  Mr. Voskuhl, however, contends that the Order should be reconsidered and amended to require the Debtors to disclose certain names and addresses of individual creditors and employees who are listed on various documents filed by the Debtors in these chapter 11 cases. This would require the Debtors to reveal personally identifying and commercially sensitive information that could diminish the value of the Debtors' estates.  The creditors and employees with information that was redacted are individual employees or independent contractors and include the Debtors' on-air talent.  Many of these individuals have a high profile and it is critical for the Debtors to maintain their relationships with these key employees and individuals in order for the Debtors to execute on their business objectives.

3.     Mr. Voskuhl's request in the Letter should be denied for the following reasons. ***First***, the Letter does not provide a sufficient basis to satisfy the high bars for reconsideration set

by rules 59(e) ("Rule 59(e)") and 60(b) ("Rule 60(b)") of the Federal Rules of Civil Procedure, as incorporated by rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") *In re Garrett-Beck Corp.*, No. 09-37774, 2012 WL 3727318, at *3 (Bankr. S.D. Tex. Aug. 27, 2012) (citing *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n. 10 (5th Cir. 1998)). **Second,** even if the Court finds that the high bars set by Rules 59 and 60 have been met and the Court agrees to reconsider the Order—looking past the Bankruptcy Local Rules and other procedural defects—the information requested by Mr. Voskuhl requires the Debtors to disclose information that is and should be protected under section 107 of the Bankruptcy Code.

4.      Mr. Voskhul fails to demonstrate any valid justification for compelling the Debtors to provide this information.  Bloomberg plays absolutely no part in these chapter 11 cases.  It is not a creditor and did not attempt to request this information from the Debtors.  Instead, Mr. Voskul went straight to the Court with his request.  Given a lack of demonstrated reason or any connection to the chapter 11 cases, the motive behind Mr. Voskuhl's request seems to be transparent: Bloomberg wants to obtain the information regarding amounts owed to high-profile individuals and on-air talent in order to write an article that would attract readers and benefit their business. Doing so at the expense of the Debtors' interests, however, is not a compelling reason for the Court to reconsider the Order.

## Objection

**A.      The Letter Fails To Meet The High Bars Set By The Federal Rules of Civil Procedure and the Bankruptcy Rules.**

5.      This Court has previously found that neither the Federal Rules of Civil Procedure nor the Bankruptcy Rules specifically provide for motions for reconsideration.  *In re Garrett-Beck Corp.*, No. 09-37774, 2012 WL 3727318, at *3 (Bankr. S.D. Tex. Aug. 27, 2012).  Motions for

reconsideration may be made under either Rule 59 or Rule 60.  Because the Letter was filed *seventy-five* days after the entry of the Order, the Letter must be treated as a Rule 60(b) motion. *Id.*

6.      "Motions to reconsider under Rule 60 must be brought within a reasonable time, and not more than one year after the entry of the order." *Id.*  Although Mr. Voskuhl filed the Letter less than a year after the entry of the Order, the timing is still unreasonable. Mr. Voskuhl waited seventy-five days before filing the Letter and did not attempt to contact the Debtors or their counsel before doing so.  At this point, the Debtors have already secured authorization to pay many of these creditors and employees under first day motions, including the *Final Order (I) Authorizing The Debtors to Pay or Honor Prepetition Claims and Obligations of On-Air Talent, Station Affiliates, and Copyright Owners and (II) Granting Related Relief* [Docket No 456] and the *Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* [Docket No. 453].

7.      In addition to filing its motion in a timely manner, a movant must satisfy a high burden to obtain reconsideration of a court's previously entered order.  Rule 60(b) provides for relief from a final judgment under the following circumstances: "(i) mistake, inadvertence, surprise, or excusable neglect; (ii) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (iii) fraud, misrepresentation, or other misconduct of an adverse party; (iv) the judgment is void; (v) the judgment has been satisfied, released or discharged; or (vi) any other reason justifying relief from the operation of the judgment." *In re Garrett-Beck Corp.*, at *4; *Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 669 (5th Cir. 1986).  Moreover, the movant bears the burden of proof

on a motion for reconsideration. *In re Terrestar Networks, Inc.*, No. 10-15446 SHL, 2013 WL 781613, at *1 (Bankr. S.D.N.Y. Feb. 28, 2013).

8.     Mr. Voskuhl has not met this burden with the bare statements in his letter.  Mr. Voskuhl does not allege any of the requisite circumstances in his Letter and cites no law.  Mr. Voskuhl's sole argument is that the relief requested in the Letter should be granted to "ensure that the public's interest in this case is protected to the fullest extent possible." *See Letter*. This fails to fall into the circumstances contemplated under subsections (i)-(v) of Rule 60(b) and therefore can only be analyzed under subsection (vi).  Mr. Voskuhl's Letter, however, fails to set forth sufficient reason justifying the requested relief.

9.     A motion to reconsider "should not be granted where the moving party seeks solely to relitigate an issue already decided." *In re Enron Corp.*, No. 01-16034 (AJG), 2007 WL 130865, at *1 (Bankr. S.D.N.Y. Jan. 16, 2007).  Rather, the standard for reconsideration of a court's prior decision requires the movant to cite ***significant law or facts*** that the court failed to consider in its ruling, including newly discovered material evidence (emphasis added). *See id*. ("The standard for granting . . . a motion [for reconsideration] is strict, and *reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—* matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.") (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)) (emphasis added); *see also Terrestar Networks, Inc*., at *2 ("[M]otions for reconsideration and to amend or alter judgment serve a limited function—to correct manifest errors of law or fact or to present newly discovered evidence.") (citing *In re Pothoven*, 84 B.R. 579, 582 (Bankr. S.D. Iowa 1988)). Mr. Voskuhl fails to cite new law or facts.  Instead, Mr. Voskuhl vaguely appeals to the "public

interest" as his sole reason for asking the Court to reconsider the Order. Such vague appeals are unpersuasive and, as a result, this Court should deny the relief requested in the Letter.

10.     Even if Mr. Voskuhl is entitled to raise this new "public interest" argument, he still does not meet his burden under Rule 60(b).  In the Letter, Mr. Voskuhl conflates revealing the names of private, independent contractors and employees with protecting the public's interest. Although Mr. Voskuhl states that the identity and address information of these creditors and employees are "important to a full understanding of the proceedings and possible outcomes" and that "to ensure that the public's interest in this case is protected to the fullest extent possible."  The Letter, however, provides no support or reasoning for those assertions. *See Letter*.  The Debtors have disclosed the amounts owed to the various creditors and employees, which is the information most relevant to other creditors of the Debtors' estates.  Accordingly, the relief sought in the Letter should be denied.

**B.      The Redacted Information Includes Highly Sensitive, Personally Identifiable Information, as well as Commercial Information Regarding Certain Independent Contractors and Employees.**

11.     Even if the Letter had been procedurally proper, the relief requested therein should still be denied.  Section 107(c) of the Bankruptcy Code provides that the Court, "for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft . . . [a]ny means of identification . . . contained in a paper filed, or to be filed in a case under" the Bankruptcy Code. 11 U.S.C. § 107(c)(1)(A).  The Debtors respectfully submit that cause existed, and continues to exist, to authorize the Debtors to redact the names and addresses of individual creditors where those creditors are the Debtors' employees and independent contractors.  Disclosing the names and addresses of the Debtors' employees, many of whom are well-known, on-air talent, would put

these high-profile individual's personal information at risk, which information could be used for problematic purposes.

12.     Further, disclosure of the requested information would require the Debtors to share highly sensitive, commercial information in the form of amounts owed to their on-air talent and amounts owed to their employees by virtue of their employment.  Endangering these relationships could be harmful to the Debtors, and protecting relationships like these is the reason section 107(b) of the Bankruptcy Code exists. The on-air talent is the lifeblood of the Debtors' business, and any actions that put those contracts at risk could harm the Debtors' estates.

13.     Agreements with on-air talent are critical to the Debtors' radio operations, with a substantial portion of the Debtors' customer base tuning in specifically to listen to the on-air talent. "A bankruptcy court is required to seal documentary information filed in court that does not rise to the level of a trade secret but that is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefits that entity's competitors." *In re Northstar Energy, Inc.*, 315 B.R. 425, 429 (Bankr. E.D. Tex. 2004) (citing *In re Barney's Inc.*, 201 B.R. 703, 708-09 (2d Cir. 1996)). Publishing information that would put these contracts at risk by informing competitors of critical information, such as the amounts owed to the on-air talent, could enable them to poach talent or harm the Debtors' relationships with their on-air talent .  Section 107 of the Bankruptcy Code is specifically designed to protect "business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury." *In re Northstar Energy, Inc.*, 315 B.R. at 429.

14.     Indeed, this Court recognized the importance of on-air talent to the Debtors' business at the first-day hearing. The Court noted that, "In large part the talent, according to the Debtors, drives the audience and if the talent were lost, the audience could drop. And if the

audience drops, the revenues would drop. I think a persuasive case has been made that . . . these are critical providers of talent of the Debtor and that without it, we risk failure of these cases . . . based on what I've reviewed in the evidence and sort of common sense, to say that paying the talent is necessary to the success of the case despite the fact that it is on an initial basis paying high net worth individuals, which I think militates against it, but I think it's overcome by the justifications that the Debtor has made."  Hr'g Tr., 107:20-25, 108:1-9.

15.     Courts in other jurisdictions have held that when sharing the list of creditors would be detrimental to the operations of the debtor, the court "shall . . . protect an entity with respect to a trade secret or confidential information." *In re Frontier Grp., LLC*, 256 B.R. 771, 773 (Bankr. E.D. Tenn. 2000).  In *In re Frontier Group*, the court approved the debtor's Motion to Seal List of Creditors. *Id.*  There, the debtor acted as an employment or brokerage agency that arranged for physicians to serve in emergency rooms of various client hospitals. *Id.*  The list of physicians was the debtor's primary asset and, unless its creditor list was sealed, "competitors [would] be able to view the list, identify its contracting physicians, and recruit those physicians away from the [d]ebtor."  Courts in the Fifth Circuit have held similarly. In *In re Northstar Energy*, the debtor moved for a protective order to prevent disclosure of a list of investors that it claimed was critical to its business of acquiring and developing prospective oil and gas properties. *In re Northstar Energy, Inc.*, 315 B.R. 425 (Bankr. E.D. Tex. 2004).  The court held in favor of the debtor because "the investor procurement functions were crucial to its business plan, but those functions would have been severely jeopardized by the unrestricted publication of the investor list, which would likely have been utilized by competing promoters to the detriment of the debtor." *Id.* at 429.  Here, the Debtors' business plan depends on continuing relationships with its on-air talent and employees.

16.

17.     For these reasons, the Debtors respectfully submit that cause existed, and continues to exist, to authorize the Debtors to redact names and addresses of individual creditors who are the Debtors' employees and independent contractors from the Debtors' filed documents because such information could provide the Debtors' competitors with an unfair competitive advantage.

## **Conclusion**

18.     The Order established the Debtors' right to redact information protected by section 107 of the Bankruptcy Code.  Even if this Court looks past the numerous procedural defects in Mr. Voskuhl's Letter, the redacted information is protected by the Bankruptcy Code, and the protection of that information is important to the Debtors' business the Debtors' overall restructuring efforts.  In light of the foregoing, the Debtors respectfully request that the Court deny the relief requested in the Letter.  If the Court is inclined to reconsider the Order, the Debtors should be afforded an opportunity to provide the Court with evidence supporting the importance of protecting the information under section 107 of the Bankruptcy Code.


[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court deny the relief requested in the Letter and grant such other relief as may be necessary and appropriate.

Houston, Texas
June 6, 2018

/s/ *Patricia B. Tomasco*

Patricia B. Tomasco (TX Bar No. 01797600)
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:          ptomasco@jw.com
               mcavenaugh@jw.com
               jwertz@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

James H.M. Sprayregen, P.C.
Anup Sathy, P.C. (admitted *pro hac vice*)
Brian D. Wolfe (admitted *pro hac vice*)
William A. Guerrieri (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          james.sprayregen@kirkland.com
               anup.sathy@kirkland.com
               brian.wolfe@kirkland.com
               will.guerrieri@kirkland.com

-and-

Christopher J. Marcus, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          christopher.marcus@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*