# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|   |   |   |
|---|---|---|
| In re | : | Chapter 11 |
| IHEARTMEDIA, INC., *et al.*,[1] | : | Case No. 18-31274 (MI) |
| Debtors. | : | (Jointly Administered) |

## LIMITED OBJECTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION TO CONFIRMATION OF THE DEBTORS' MODIFIED FIFTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

Wilmington Trust, National Association ("Wilmington Trust"), solely in its capacity as successor indenture trustee for the 9% Priority Guarantee Notes due 2019 (the "9% PGNs"), issued pursuant to that certain Indenture, dated as of October 25, 2012, by and among, *inter alios*, iHC, as issuer, iHeart Capital I, as holdings, each of the Subsidiary Guarantors, U.S. Bank National Association (as predecessor to Wilmington Trust), as trustee, paying agent, registrar, custodian, and transfer agent, and Deutsche Bank Trust Company Americas, as collateral agent (as may be amended, supplemented or otherwise modified the "Indenture"), by and through its undersigned counsel, hereby submits this limited objection (the "Objection") to the *Modified Fifth Amended Joint Chapter 11 Plan of Reorganization of iHeartMedia, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2207] (as may be amended, the "Fifth Amended Plan"), and in support hereof, respectfully states as follows:

---

[1] Due to the large number of Debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided here.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at www.primeclerk.com/iheartmedia.  The location of Debtor iHeartMedia, Inc.'s principal place of business and the Debtors' service address is:  20880 Stone Oak Parkway, San Antonio, Texas 78258.

**PRELIMINARY STATEMENT[2]**

Simply put, Wilmington Trust currently has a contractual right to indemnity from the Debtors. That right gives rise to a valid claim that must either be assumed by the Reorganized Debtors or, consistent with all other pre-petition claims, must be treated by the Fifth Amended Plan.

In late November 2018, Wilmington Trust learned that holders of approximately $34.7 million principal amount of 9% PGNs opted out of granting third-party releases to Wilmington Trust, among others. The ability of such holders to opt out resulted from last minute changes to the plan, which were made after Wilmington Trust had previously approved the plan in reliance on the certainty and finality that was then-contemplated by global third-party releases.

Since learning of the Opt Out 9% PGN Notes, for the last six weeks, we have asked the Debtors to confirm that Wilmington Trust's Indemnification Claim would not be stripped away by the Fifth Amended Plan. We offered to limit those indemnity rights to claims that may be asserted by opting out 9% PGNs. Despite repeated promises of a constructive dialogue and assurances of trying to find a compromise, the Debtors have not, to date, provided us any assurances.

The Fifth Amended Plan (or the related confirmation order) must be amended to properly treat Wilmington Trust's Indemnification Claims. There is no basis, whatsoever, to strip away Wilmington Trust's Indemnification Claims while providing a different treatment to the holders of 9% PGNs. The plan is unconfirmable in the event it accords different treatment to claims classified together and which arise under the same Indenture.

---

[2] Capitalized terms used in this Preliminary Statement shall have the meanings ascribed herein. Capitalized terms used herein and not defined shall have the meanings ascribed to such terms in the Fifth Amended Plan.

## BACKGROUND

1. The Indenture provides Wilmington Trust, as Trustee, with certain indemnities in connection with its ongoing provision of services under the Indenture. Specifically, among other things, pursuant to Section 7.07 of the Indenture, iHC and the Subsidiary Guarantors agreed to:

> jointly and severally, . . . indemnify . . . the Trustee . . . for, and hold . . . the Trustee . . . harmless against, any and all loss, damage, claims, liability or expense (including attorneys' fees and expenses) incurred by it in connection with the acceptance or administration of this trust and the performance of its duties hereunder (including the costs and expenses of enforcing this Indenture against the Issuer or any of the Guarantors (including this Section 7.07) or defending itself against any claim whether asserted by any Holder, the Issuer or any Guarantor, or liability in connection with the acceptance, exercise or performance of any of its powers or duties hereunder)

(any such claim, an "Indemnification Claim") (Indenture, §7.07.) Section 7.07 further provides that the Indemnification Claim "shall survive the satisfaction and discharge of this Indenture" and that any expenses incurred or services rendered after the commencement of a bankruptcy proceeding "are intended to constitute expenses of administration under any Bankruptcy Law." (*Id.*)

2. Further, to secure, among other things, the Indemnification Claim, the Indenture provides that Wilmington Trust "shall have a Lien prior to the Notes on all money or property held or collected by [Wilmington Trust]" (the "Charging Lien"). (*Id.*)[3]

3. Wilmington Trust has diligently protected its rights under the Indenture throughout these cases. On June 28, 2018, pursuant to the Bar Date Order,[4] Wilmington Trust

---

[3] Section 6.12 similarly provides that in respect of a bankruptcy proceeding of iHC or any of the Subsidiary Guarantors, that, if any payment of any "amounts due the Trustee under Section 7.07 hereof out of the estate in any such proceeding . . . shall be denied for any reason, payment of the same shall be secured by a Lien on, and shall be paid out of, any and all distributions, dividends, money, securities and other properties that the Holders may be entitled to receive in such proceeding whether in liquidation or under any plan of reorganization or arrangement or otherwise."

3

filed a master proof of claim asserting, among other things, contingent, unliquidated claims against each applicable Debtor for amounts that had accrued, or may in the future accrue, under Section 7.07 of the Indenture. (*See* Claim No. 2823.)

4. Moreover, in August 2018, Wilmington Trust, along with the other PGN Trustees, took an active role in negotiating the relevant provisions of the Debtors' proposed plan of reorganization by proposing language clarifying that any Indemnification Claims would continue as obligations of the Reorganized Debtors and that the Charging Lien securing such claims would be preserved.

5. As a result of those discussions, the Debtors included language in the plan, which protected Wilmington Trust's Charging Lien. (*See* Fifth Amended Plan, § VI.C.1.)

6. The Debtors declined, however, to provide any express treatment for the Indemnification Claim, including through the assumption of such claim by the Reorganized Debtors.

7. The Debtors argued that the plan, as contemplated at the time, would provide third-party releases to Wilmington Trust that would bind all holders of 9% PGNs (the "9% PGN Holders"), such that Wilmington Trust should have no concerns that the Indemnification Claim would materialize. Wilmington Trust agreed to the language in the plan as then contemplated, *i.e.*, in reliance upon third-party releases being granted by all 9% PGN Holders.

---

4  The "Bar Date Order" refers to the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Notice of Bar Dates* [Docket No. 743]. Pursuant to Paragraph 14 of the Bar Date Order, Wilmington Trust was authorized to file a single Master Proof of Claim (as defined in the Bar Date Order) in the chapter 11 case captioned *In re iHeartCommunications, Inc.*, (Case No. 18-31273) in order to assert claims against each applicable debtor.

8. On September 18, 2018, the Debtors filed an amended plan that permitted 9% PGN Holders, among others, to elect to opt out from the third-party releases, including those granted to Wilmington Trust.  ([Docket No. 1469] at ¶ 214.)

9. On November 26, 2018, the Debtors informed Wilmington Trust that certain of the 9% PGN Holders had indeed opted out of the third party plan releases.  Wilmington Trust has been further informed that 9% PGN Holders purporting to hold approximately $34.7 million principal amount of 9% PGNs opted out of such releases (the "Opt Out 9% PGN Notes").

10. Given these changed circumstances, Wilmington Trust immediately renewed its request to the Debtors that the Fifth Amended Plan expressly provide for the treatment of its Indemnification Claim.

11. For the last six weeks, Wilmington Trust has been in discussions with the Debtors in hopes of resolving these issues and obviating the need for this Objection.

12. During that time, the Debtors promised to engage in constructive dialogue on the issue and, accordingly, granted numerous extensions of Wilmington Trust's objection deadlines.

13. In hopes of reaching a consensual resolution, Wilmington Trust has made several proposals to the Debtors.

14. In particular, Wilmington Trust agreed that this Objection would be obviated by either (1) the Reorganized Debtors assuming any Indemnification Claims on a go-forward basis, solely limited to those arising from claims against Wilmington Trust brought by Opt Out 9% PGN Notes or (2) the following language being added to the proposed confirmation order:

> For the avoidance of doubt, the 9.0% PGN Due 2019 Claims treated and allowed under Class 4, 7C, 7D, 7E and 7F of the Plan include the claims of the 9.0% PGN Due 2019 Trustee under the 9.0% PGN Due 2019 Indenture (including, without limitation, any claims for indemnification pursuant to Section 7.07 of the 9.0% PGN Due 2019 Indenture).  Any distributions made pursuant to the

        Plan on account of 9.0% PGN Due 2019 Claims within Class 4, 7C, 7D, 7E or 7F shall be made by the 9.0% PGN Due 2019 Trustee, as Distribution Agent, to the Holders of such Claims (including the 9.0% PGN Due 2019 Trustee, as applicable).

15.    As of the filing of this Objection, the Debtors have not agreed to either proposal.

## LIMITED OBJECTION

16.    Section 1123(a)(4) provides that the plan of reorganization shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." *In re Viking Offshore (USA), Inc.*, No. 08-31219-H3-11, 2010 WL 2521730, at *3 (Bankr. S.D. Tex. June 18, 2010); *In re U.S. Brass Corp.*, 169 F.3d 957, 958 (5th Cir. 1999) (Section 1123(a)(4) "requires [that] all creditors within a class be treated the same, unless the creditor who is being treated less favorably agrees to less favorable treatment.")

17.    As discussed herein, Wilmington Trust's Indemnification Claim is a valid claim against the Debtors arising under the Indenture. *See supra* at ¶ 3; 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.").

18.    However, the Fifth Amended Plan does not provide a mechanism for Wilmington Trust to receive distributions on account of its Indemnification Claim. While the Fifth Amended Plan defines 9.0% PGN Due 2019 Claims to mean "any Claim against a Debtor arising under, derived from, secured by, based on, or related to the 9.0% PGNs Due 2019 or the 9.0% PGN Due 2019 Indenture," there is no clear procedure under the plan for making distributions on account of claims held by Wilmington Trust, such as the Indemnification Claim.

19.    The Indemnification Claim must either be assumed by the Reorganized Debtors, in which case it does not need to be treated under the Fifth Amended Plan, or else it must be

6

made clear that any distributions made under the Fifth Amended Plan on account of the 9.0% PGN Due 2019 Claims will allow for Wilmington Trust to receive plan treatment on account of its Indemnification Claim.

## RESERVATION OF RIGHTS

20.  Wilmington Trust reserves all rights with respect to the Fifth Amended Plan, including the right to amend and/or supplement this Objection, participate in additional briefing, participate in any discovery, and be heard at any hearing or trial related to the Fifth Amended Plan. Nothing contained herein shall constitute a waiver of any of the rights or remedies of Wilmington Trust, each of which is expressly reserved.

## CONCLUSION

WHEREFORE, Wilmington Trust respectfully requests that the Court (i) either (a) direct the Reorganized Debtors to assume any Indemnification Claim or (b) incorporate the clarifying language set forth in Paragraph 14 above in any Order confirming the Fifth Amended Plan and (ii) grant to Wilmington Trust such other and further relief as the Court may deem just and proper.

[*Remainder of page intentionally left blank*]

Dated: January 4, 2019 By: */s/ Michael D. Warner*
Michael D. Warner, Esq.(TX Bar No. 00792304)
**COLE SCHOTZ P.C.**
301 Commerce Street, Suite 1700
Fort Worth, Texas 76102
Telephone: (817) 810-5265
Email: mwarner@coleschotz.com

and

Jayme T. Goldstein (*pro hac vice*)
Daniel A. Fliman (*pro hac vice*)
Brian Wells (*pro hac vice*)
Isaac S. Sasson (*pro hac vice)*
**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, New York 10038-4982
Telephone: (212) 806-5400
Email: jgoldstein@stroock.com
dfliman@stroock.com
bwells@stroock.com
isasson@stroock.com

**CO-COUNSEL FOR WILMINGTON TRUST, NATIONAL ASSOCIATION**

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2019, a true and correct copy of the foregoing document was served upon all parties that are registered to receive electronic service through this court's CM/ECF noticing system in the above cases.

By: */s/ Michael D. Warner*
Michael D. Warner