IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| IHEARTMEDIA, INC., *et al.*,[1] | § § | Case No. 18-31274 (MI) |
| Debtors. | § § § | (Jointly Administered) |

**DEBTORS' THIRD MOTION TO EXTEND THEIR EXCLUSIVE PERIODS
TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
>
> **A HEARING WILL BE HELD ON THIS MATTER ON FEBRUARY 5, 2019, AT 2:30 P.M. (CT) BEFORE THE HONORABLE MARVIN ISGUR, 515 RUSK STREET, COURTROOM 404, HOUSTON, TEXAS 77002.**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") respectfully state as follows in support of this motion (this "<u>Motion</u>").

**Introduction**

1.    The Debtors seek an 83-day extension of the (a) period during which the Debtors have the exclusive right to file a chapter 11 plan (the "<u>Filing Exclusivity Period</u>") through and

---

[1]   Due to the large number of Debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims, noticing, and solicitation agent at https://cases.primeclerk.com/iheartmedia. The location of Debtor iHeartMedia, Inc.'s principal place of business and the Debtors' service address is: 20880 Stone Oak Parkway, San Antonio, Texas 78258.

KE 57932218

including April 30, 2019, which is approximately 14 months after the Petition Date[2] and (b) deadline under which the Debtors have the exclusive right to solicit a plan filed during the Filing Exclusivity Period (the "Solicitation Exclusivity Period," and, with the Filing Exclusivity Period, collectively, the "Exclusivity Periods").

2. On July 10, 2018, the Court entered the *Order Extending the Debtors' Exclusivity Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 1098] extending the Debtors' Exclusivity Periods through and including November 24, 2018, for filing a chapter 11 plan, and January 23, 2019, for soliciting votes on a chapter 11 plan, without prejudice to the Debtors' ability to further extend the Exclusivity Periods. On November 19, 2018, the Court entered the *Second Order Extending the Debtors' Exclusivity Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 1959] extending the Debtors' Exclusivity Periods through and including February 7, 2019, for filing a chapter 11 plan, and April 8, 2019, for soliciting votes on a chapter 11 plan, without prejudice to the Debtors' ability to further extend the Exclusivity Periods. By this Motion, the Debtors seek a further extension to ensure that the Debtors can continue to prosecute the *Modified Fifth Amended Joint Chapter 11 Plan of Reorganization of iHeartMedia, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2207] (the "Plan")—which has the support of over 90 percent of voting creditors—without distraction from other competing plans.

3. Although the Debtors have not yet confirmed the Plan, a series of hearings to confirm the Plan began on January 10, 2019, and are scheduled to continue throughout the month of January. Following the confirmation of the Plan, the Debtors will move as expeditiously as possible to emerge from these chapter 11 cases. However, the Debtors do not anticipate

---

[2] Capitalized terms not defined herein shall have the meanings set forth in the Plan.

emerging before the current expiration of exclusivity, and therefore are seeking this extension out of an abundance of caution in the event that unforeseen issues arise with respect to confirming or effectuating the Plan. An 83-day extension is therefore appropriate and will not prejudice any parties in interest.

    **(a)  Committee Plan Settlement.**

4. On April 28, 2018, the Debtors filed an initial version of the Plan to comply with milestones under the Restructuring Support Agreement. After filing the Plan, the Debtors continued to engage with their key creditor and stakeholder groups, including the Committee, in an effort to build consensus around the Debtors' restructuring process, including, among other things, the treatment of general unsecured creditors.

5. After extensive, hard-fought negotiations, the Debtors, Committee, and Consenting Stakeholders reached an agreement regarding the treatment of general unsecured creditors (the "Committee Plan Settlement"), which was embodied in the *Fifth Amended Joint Chapter 11 Plan of Reorganization of iHeartMedia, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1632]. The Debtors also filed their supplement to the Disclosure Statement [Docket No. 1631], which was sent to certain Holders of General Unsecured Claims entitled to vote on the Plan explaining, among other things, the terms of the Committee Plan Settlement.

6. Pursuant to the Disclosure Statement Order, Prime Clerk solicited and tabulated ballots submitted by Holders entitled to vote on the Plan, which was accepted by all voting Classes.[3] In total, greater than 90 percent of voting creditors voted to accept the Plan.

---

[3] *See* Voting Report [Docket No. 2116], Supplemental Voting Report [Docket No. 2246].

KE 57932218

      **(b)    CCOH Settlement.**

7.    As discussed in detail in the Disclosure Statement, a key component of the Debtors' Plan is the separation of their business from that of CCOH.[4] Since the filing of the Disclosure Statement and subsequent solicitation, the Debtors and CCOH continued working toward a comprehensive settlement that would separate the two businesses and resolve a number of claims and causes of action brought by GAMCO Asset Management Inc. ("GAMCO"), one of the largest minority shareholders of CCOH, and Norfolk County Retirement System ("Norfolk"), another minority shareholder of CCOH. Both GAMCO and Norfolk had raised certain concerns regarding the Debtors' Disclosure Statement and Plan, including with respect to the Plan's release of certain claims brought by GAMCO in the GAMCO Litigation[5] and by Norfolk in the Norfolk Litigation.[6] On December 17, 2018, after months of extensive, hard-fought negotiations, the Debtors, CCOH, GAMCO, and Norfolk reached agreement on a global settlement of all claims, objections, and other causes of action that have been or could be asserted by or on behalf of CCOH, GAMCO, and/or Norfolk by and among the Debtors, CCOH, GAMCO, certain individual defendants in the GAMCO Litigation and/or the Norfolk Litigation, and the private equity sponsor defendants in the GAMCO Litigation and/or Norfolk Litigation (the "CCOH Settlement"). The CCOH Settlement includes hundreds of pages of separation documents memorializing the way the business will operate as separate entities. To implement

---

[4]    *See* Disclosure Statement, Art. VII.P.

[5]    As used herein, "GAMCO Litigation" means the putative class action lawsuit currently pending in the Court of Chancery of the State of Delaware, captioned *GAMCO Asset Management, Inc. v. Hendrix, et al., C.A. No. 2018-0633-JRS*.

[6]    As used herein, "Norfolk Litigation" means the derivative action filed on behalf of CCOH captioned *Norfolk County Retirement System v. Hendrix, et al.*, C.A. No. 2017-0930-VCS, pending in the Delaware Court of Chancery.

KE 57932218

the terms of the CCOH Settlement, the Debtors, CCOH, and GAMCO sought and received preliminary Court approval of the CCOH Settlement.[7]

8. The Debtors filed a modified version of the Plan [Docket No. 2207], which incorporates the settlement of potential claims and causes of action by and among the Debtors, CCOH, GAMCO, and Norfolk arising under certain intercompany arrangements, the GAMCO Litigation, the Norfolk Litigation, and Norfolk's objection to the Plan.

9. The CCOH Settlement allows the Debtors to clear the final hurdle in these chapter 11 cases. The fully consensual agreement, which was heavily negotiated at arms'-length, includes the following key terms: (a) $150 million of recovery to CCOH on account of its Claim [Claim No. 3833]; (b) a $200 million unsecured revolving line of credit provided by the Debtors to CCOH for a period of up to 3 years; (c) the transfer of certain of the Debtors' intellectual property to CCOH and a waiver by the Debtors of the setoff for the value of the transferred intellectual property; (d) the termination of the cash sweep under the existing Corporate Services Agreement; (e) the termination of any agreements or licenses requiring royalty payments from CCOH to the Debtors for trademarks or other intellectual property; (f) the waiver of any postpetition amounts owed by CCOH relating to such trademarks or other intellectual property; (g) the execution of a new transition services agreement and other separation documents; (h) repayment of the postpetition intercompany balance outstanding as of December 31, 2018; and (i) mutual releases under the Plan, including a settlement of the GAMCO Litigation and Norfolk Litigation and related attorneys' fees. The CCOH Settlement ensures that CCOH is

---

[7] *See Order (I) Directing the Application of Bankruptcy Rules 7023 and 7023.1, (II) Preliminarily Approving the Settlement, (III) Approving the Retention of Prime Clerk LLC as Notice Administrator, (IV) Approving the Form and Manner of Notice, (V) Scheduling a Fairness Hearing to Consider Final Approval of the Settlement as Part of Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 2219] and *Order (I) Directing the Application of Bankruptcy Rules 7023 and 7023.1, (II) Certifying a Class, Designating a Class Representative, and Appointing Class Counsel for Purposes of Settlement, and (III) Granting Related Relief* [Docket No. 2221] (together, the "CCOH Settlement Orders").

adequately capitalized following the separation and preserves the value of minority shareholders' equity investment.

10. The Debtors' have built substantial consensus in these chapter 11 cases, which has allowed them to focus their efforts on maximizing the value of their estates. This remarkable consensus has been achieved against the backdrop of large, complex chapter 11 cases involving billions of dollars of funded debt obligations, global operations, thousands of employees, and a diverse set of stakeholder constituencies. These achievements signify the Debtors' continued efforts to maximize the value of their estates, concluding these proceedings in a comprehensive and final manner. Through these efforts, the Debtors are on the verge of a significant accomplishment—confirmation of the Plan and emergence from chapter 11. The Debtors are confident that the Plan will unlock substantial value for the benefit of all their stakeholders.

11. Accordingly, given the facts and circumstances of these chapter 11 cases and the standards set forth by applicable law, the Debtors believe they meet the standard for the extension of the Exclusivity Periods requested herein.

## Relief Requested

12. The Debtors seek entry of an order extending the Filing Exclusivity Period through and including April 30, 2019, and the Solicitation Exclusivity Periods through and including June 29, 2019.

## Jurisdiction and Venue

13. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties,

6

cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

14. Venue is permissible pursuant to 28 U.S.C. §§ 1408 and 1409.

15. The statutory basis for the relief requested herein is section 1121 of title 11 of the United States Code (the "Bankruptcy Code").

**Basis for Relief**

16. Section 1121(b) of the Bankruptcy Code establishes an initial period of 120 days after the commencement of a chapter 11 case during which only a debtor may file a plan and an additional 60-day period during which only the debtor may solicit votes for a plan, both of which are subject to extension through motion practice. Currently, the Filing Exclusivity Period will expire on February 7, 2019, and the Solicitation Exclusivity Period will expire on April 8, 2019. Although the hearings to confirm the Plan have begun, the Debtors believe it is prudent to seek an extension of the Exclusivity Periods in order to preserve their exclusive ability to file and solicit a new chapter 11 plan should unforeseen issues arise with respect to confirming and effectuating the Plan.

17. Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause." Although the Bankruptcy Code does not define "cause," bankruptcy courts have discretion to extend exclusivity to promote the orderly, consensual, and successful reorganization of a debtor's affairs. *See In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) (noting that the meaning of "cause" under section 1121 should be viewed in context of the Bankruptcy Code's goal of fostering reorganization); *In re Mirant Corp.*, No. 4-04-CV-476-A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) (noting that an extension of exclusivity is typically granted where "the debtor has shown substantial progress toward reorganization").

7

18. Courts often use the following factors in determining whether "cause" exists to extend a debtor's exclusive plan filing period:

   a. the size and complexity of the case;

   b. the need for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

   c. whether the debtor has made progress in negotiations with its creditors;

   d. the existence of good faith progress toward reorganization;

   e. whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands;

   f. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

   g. the fact that the debtor is paying its bills as they become due;

   h. the amount of time which has elapsed in the case; and/or

   i. whether an unresolved contingency exists.

*See, e.g.*, *In re New Millennium Mgmt., LLC*, No. 13-35719 (LZP), 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014) (listing factors relevant to whether "cause" exists to extend exclusivity periods) (citing *In re GMG Cap. Partners III, L.P.*, 503 B.R. 596 (Bankr. S.D.N.Y. 2014)); *see also In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (denying motion to terminate exclusivity based on factors for cause).

19. Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods. *See, e.g.*, *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (listing all nine factors later set forth in *Adelphia* but relying on only four as relevant in determining whether there was "cause" to extend exclusivity); *In re Interco, Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992) (four factors showed that bondholders' committee failed to show cause to terminate debtors' exclusivity).

20.    Further, the Debtors assert that, given the facts and circumstances of these chapter 11 cases and the broad consensus already achieved, the requested 83-day extension is warranted. In general, large, complex chapter 11 cases take substantial time to reach confirmation. *See, e.g.*, *Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bank. D. Del. May 1, 2015) (granting third extension of approximately 129 days for a total 18-month exclusive period); *In re Triad Guaranty Inc.*, No. 13-11452 (MFW) (Bankr. D. Del. Oct. 15, 2014) (granting third extension of approximately 65 days for total 18-month maximum exclusive period); *In re Exide Technologies*, No. 13-11482 (KJC) (Bankr. D. Del. Aug. 29, 2014) (granting third extension of approximately 130 days for total 18-month maximum exclusive period); *In re Specialty Products Holding Corp.*, No. 10-11780 (JFK) (Bankr. D. Del. Nov. 15, 2011) (granting third extension of approximately 60 days for total 18-month maximum exclusive period); *In re The Great Atlantic & Pacific Tea Company, Inc.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 27, 2012) (granting third extension of approximately 150 days for total maximum exclusive period); *In re Frontier Airlines Holdings, Inc.*, No. 08-11298 (RDD) (Bankr. S.D.N.Y. May 20, 2009) (granting third extension of approximately 125 days for total maximum exclusive period); *In re In re Lehman Bros. Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. July 20, 2009) (granting an extension for the total 18-month maximum exclusive period); *In re Dana Corp.*, No. 06-10354 (BRL) (Bankr. S.D.N.Y. Dec. 19, 2006) (same); *In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. Dec. 6, 2006) (same); *In re Edison Mission Energy*, No. 12-49219 (JPC) (Bankr. N.D. Ill. Oct. 24, 2013) (same); *In re Mirant Corp.*, No. 03-46591 (DML) (Bankr. N.D. Tex. May 10, 2004) (same).  Accordingly, a 90-day extension is warranted.

21.    As set forth above, the Debtors are diligently working toward confirmation of their Plan and have used their time in chapter 11 productively and efficiently, including

9

stabilizing their business upon entry into chapter 11 through the filing of first day motions and working in good faith with their stakeholders to build support for a successful resolution of these chapter 11 cases.

22. Accordingly, the Debtors submit that sufficient "cause" exists pursuant to section 1121(d) of the Bankruptcy Code to extend the Exclusivity Periods as provided herein. As set forth below, each of the relevant factors weighs in favor of an extension of the Exclusivity Periods.

I.  **The Debtors' Chapter 11 Cases Are Large and Complex.**

23. The wide scope of the Debtors' operations and size of their capital structure—the largest of any company (by funded debt) to seek chapter 11 protection in 2018—means the Debtors must navigate a number of complex issues during these chapter 11 process. As of the Petition Date, the Debtors had approximately $16.2 billion of outstanding funded-debt obligations, consisting of obligations under an ABL Credit Agreement, a Term Loan Credit Agreement with two tranches, multiple issuances of Priority Guarantee Notes, 2021 Notes, and Legacy Notes. The Debtors also have obligations to thousands of vendors, more than 12,000 employees, government agencies, and contractual counterparties. *See Disclosure Statement,* Art. V. As discussed herein, the Debtors have made significant progress towards confirming a plan.

24. Courts have acknowledged that the size and complexity of a debtor's case alone may provide cause for extending a debtor's exclusivity periods. *See Express One*, 194 B.R. at 100 (approving the debtor's third exclusivity extension and noting that "the traditional ground for cause is the large size of the debtor and the concomitant difficult in formulating a plan of reorganization"). Certainly, the size and complexity of these chapter 11 cases alone provides sufficient cause for the Court to extend the Exclusivity Periods.

II. **The Debtors Have Negotiated a Reorganization With the Vast Majority of Creditors and Stakeholders and Are on the Verge of Confirming a their Plan.**

25. Leading up to and since the Petition Date, the Debtors have made substantial progress in negotiating with their stakeholders and administering these chapter 11 cases, which further warrants an extension of the Exclusivity Periods, including:

(a) *Entering into the Restructuring Support Agreement*. The Debtors commenced these chapter 11 cases with substantial stakeholder support for a comprehensive restructuring. This support is embodied in the Restructuring Support Agreement, which has provided the foundation for these chapter 11 cases to date.

(b) *Assisting the Committee with Due Diligence Efforts*. The Debtors have expended significant effort in assisting the Committee and other objectors to the Plan with conducting due diligence, including providing documents, hosting in-person conferences and holding multiple telephone conferences. The Debtors produced a large volume of documents and information to the Committee in a relatively short period of time, and such diligence was instrumental in negotiating the Committee Plan Settlement.

(c) *Defending the Legacy Noteholders' Litigation.* On March 21, 2018, Wilmington Savings Fund Society ("WSFS"), as successor indenture trustee for the Legacy Notes, filed an adversary proceeding against certain Debtors [Docket No. 242]. In this adversary proceeding, the Legacy Noteholder Group asserts that they are entitled to be secured "equally and ratably" on certain properties with the PGN Holders. The Debtors have filed a motion to dismiss the complaint, and on May 7, the Court heard arguments on the Debtors' motion (and the Motion to Dismiss of the Senior Creditors) and requested further briefing on the matter. Additionally, the Debtors filed their answer to the Legacy Noteholders' Complaint on June 11, 2018. Oral arguments on pre-trial briefs filed in the Legacy Noteholders' litigation were held on October 18, 2018, and the trial was conducted on October 24, 2018. In addition, on October 9, 2018, WSFS filed a second adversary proceeding alleging a number of purported wrongs and seeking certain equitable relief, including equitable subordination of interests held by, and the designation of votes cast by, certain shareholders and Clear Channel Holdings, Inc [Docket No. 1598]. Through the second adversary complaint, WSFS seeks to remedy harms that it allegedly suffered from the shareholders' breaches of fiduciary duties.

(d) *Obtaining Critical Financial and Operational Relief*. The Debtors stabilized their business operations through various forms of operational first and second-day relief. This relief included, among other things,

11

authority to continue to use cash collateral, pay employees and talent, continue customer programs, and continue to use their cash management system. On April 12, 2018, the Court granted final approval of the Debtors' use of Cash Collateral [Docket No. 452], which, along with the debtor in possession financing [Docket No. 745], has provided the liquidity needed to fund the administration of these chapter 11 cases. Additionally, the debtor in possession financing facility refinanced the prepetition ABL facility, resulting in significant cost savings to the Debtors' estates.

(e) *Filing a Chapter 11 Plan and Disclosure Statement*. The Debtors solicited input from parties in interest with respect to both the Plan, Disclosure Statement, and the supplement to the Disclosure Statement. The Debtors' substantial progress in working with their creditors and administering these chapter 11 cases to this point supports the extension of the Exclusivity Periods.

(f) *Negotiating the CCOH Settlement*. After months of arms'-length, hard fought negotiations with various parties, the Debtors reached a settlement [Docket Nos. 2111, 2114] to effectuate the separation as contemplated by the Disclosure Statement. The CCOH Settlement has been integrated into the latest version of the Plan [Docket No. 2207].

(g) *Obtaining the Committee's Support for the Plan.* The Debtors reached agreement with the Committee regarding the terms of the Committee Plan Settlement, which are incorporated into the Plan. The Committee Plan Settlement also resolves the Committee's Standing Motion and the Disputed ABL Claims Objection, providing the Debtors a clearer path to confirmation and an efficient resolution of these chapter 11 cases.

(h) *Filing FCC Long Form Applications*. On October 9, 2018, the Debtors took the crucial step of filing their FCC Long Form Application, which begins the regulatory approval process for assignment of the Debtors' FCC licenses necessary for the Debtors to emerge from chapter 11.

(i) *Soliciting Votes on the Plan.* Pursuant to the Disclosure Statement Orders, Prime Clerk solicited and tabulated ballots submitted by Holders entitled to vote on the Plan. Approximately 90 percent of voting creditors and shareholders voted to accept the Plan [Docket Nos. 2116, 2246].

26. The Debtors' substantial progress in working with their stakeholders and administering these chapter 11 cases to this point supports the extension of the Exclusivity Periods. *See In re Mirant Corp.*, 2004 WL 2250986, at *2 (noting that an extension of exclusivity is typically granted where "the debtor has shown substantial progress toward

12

reorganization").

### III. The Debtors Are Not Pressuring Creditors by Requesting an Extension of the Exclusive Periods.

27. The Debtors are not seeking an extension of the Exclusivity Periods to pressure or prejudice any of their stakeholders. The Plan enjoys the broad support of the Debtors' key stakeholders, including the Senior Creditors, CCOH, and the Committee, and the Debtors have consistently sought to build further consensus among their stakeholders. Accordingly, the Debtors are not seeking an extension of their Exclusivity Periods to pressure their creditors or other parties in interest.

### IV. The Debtors Are Paying Their Bills as They Come Due.

28. The Debtors have paid their postpetition debts in the ordinary course of business or as otherwise provided by Court order, and have secured final approval for their use of Cash Collateral and debtor-in-possession financing. The Debtors will continue to pay their bills in the ordinary course as they become due and owing.

### V. An Extension of the Exclusivity Periods Is in the Best Interest of All Parties in Interest.

29. The Debtors seek to maintain exclusivity so parties with competing interests do not impede the Debtors' pursuit of the highly-consensual, value-maximizing restructuring transactions contemplated by the Plan. Extending the Exclusivity Periods benefits all parties in interest by preventing the drain on time and resources that inevitably occurs when multiple parties with potentially diverging interests vie for the consideration of their own respective plans. All stakeholders benefit from continued stability and predictability that a central process provides, which can only occur while the Debtors remain the sole plan proponents. The Debtors have been in extensive communication with all parties in interest regarding the Plan and concerns posed with respect thereto, and will continue such discussions. Moreover, even if the

Court approves an extension of the Exclusivity Periods, nothing prevents parties in interest from later arguing to the Court that cause supports termination of the Debtors' exclusivity should such cause arise. Accordingly, an extension of the Exclusivity Periods is in the best interest of the Debtors' estates, their creditors, and all other parties in interest.

30. An objective analysis of the relevant factors demonstrates that the Debtors are doing everything that they should be doing as chapter 11 debtors to facilitate a successful conclusion to these complex chapter 11 cases. Accordingly, the Debtors respectfully submit that sufficient cause exists to extend the Exclusivity Periods as provided herein. Courts in this district have granted relief similar to that requested herein. *See, e.g.*, *In re EXCO Resources, Inc*. No. 18-30155 (MI) (Bankr. S.D. Tex. Aug. 8, 2018) (granting second extension of exclusive filing period of approximately 2 months); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. April 9, 2018) (granting second extension of exclusive filing period of approximately 8 months for a total 18-month exclusive filing period); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. February 8, 2017) (granting second extension of exclusive filing period of approximately 10 months for a total 18-month exclusive filing period); *In re Sherwin Alumina Co.*, LLC, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Aug. 23, 2016) (granting second extension of exclusive filing period of approximately 90 days for total 12-month exclusive filing period); *In re UGHS Senior Living, Inc.*, No. 15-80399 (LZP) (Bankr. S.D. Tex. May 23, 2016) (granting second extension of exclusive filing period for total 9-month exclusive filing period).

## Notice

31. Notice of the hearing on the relief requested in the Motion has been provided by the Debtors in accordance and compliance with Bankruptcy Rule 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances. Without limiting the

14

foregoing, due notice was afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties in interest, including: (a) the U.S. Trustee; (b) the Committee; (c) the agent for the Debtors' receivables based credit facility; (d) the agent for the Debtors' term loan credit facility; (e) the indenture trustees for the Debtors' priority guarantee notes, 14.0% senior notes due 2021, 6.875% senior notes due 2018, and 7.25% senior notes due 2027; (f) counsel to an ad hoc group of lenders under the Debtors' term loan credit facility and priority guarantee noteholders; (g) counsel to an ad hoc group of lenders under the Debtors' term loan credit facility; (h) counsel to an ad hoc group of holders of 6.875% senior notes due 2018 and 7.25% senior notes due 2027; (i) counsel to an ad hoc group of holders of 14.0% senior notes due 2021; (j) the Office of the United States Attorney for the Southern District of Texas; (k) the state attorneys general for states in which the Debtors conduct business; (l) the Internal Revenue Service; (m) the Securities and Exchange Commission; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
January 11, 2019

/s/  Patricia B. Tomasco

| | |
|---|---|
| Patricia B. Tomasco (TX Bar No. 01797600) | James H.M. Sprayregen, P.C. |
| Elizabeth Freeman  (TX Bar No. 24009222) | Anup Sathy, P.C. (admitted *pro hac vice*) |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | Brian D. Wolfe (admitted *pro hac vice*) |
| **JACKSON WALKER L.L.P.** | William A. Guerrieri (admitted *pro hac vice*) |
| 1401 McKinney Street, Suite 1900 | Benjamin M. Rhode (admitted *pro hac vice*) |
| Houston, Texas 77010 | **KIRKLAND & ELLIS LLP** |
| Telephone:   (713) 752-4200 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Facsimile:   (713) 752-4221 | 300 North LaSalle Street |
| Email:        ptomasco@jw.com | Chicago, Illinois 60654 |
|                    efreeman@jw.com | Telephone:   (312) 862-2000 |
|                    mcavenaugh@jw.com | Facsimile:    (312) 862-2200 |
| | Email:         james.sprayregen@kirkland.com |
| |                      anup.sathy@kirkland.com |
| *Co-Counsel to the Debtors* |                      brian.wolfe@kirkland.com |
| *and Debtors in Possession* |                      will.guerrieri@kirkland.com |
| |                      benjamin.rhode@kirkland.com |

-and-

Christopher Marcus, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900
Email:         christopher.marcus@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

KE 57932218

## Certificate of Service

      I certify that on January 11, 2019, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                 */s/ Patricia B. Tomasco*
                                                                Patricia B. Tomasco

KE 57932218