# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|                                         | § |                        |
|-----------------------------------------|---|------------------------|
| In re:                                  | § | Chapter 11             |
|                                         | § |                        |
| IHEARTMEDIA, INC., *et al.*,[1]         | § | Case No. 18-31274 (MI) |
|                                         | § |                        |
| Debtors.                                | § | (Jointly Administered) |
|                                         | § |                        |

## DEBTORS' FOURTH MOTION TO EXTEND THEIR EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
>
> **A HEARING WILL BE HELD ON THIS MATTER ON APRIL 16, 2019, AT 1:30 P.M. (CT) BEFORE THE HONORABLE MARVIN ISGUR, 515 RUSK STREET, COURTROOM 404, HOUSTON, TEXAS 77002.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion").

## Introduction

1. The Debtors currently anticipate that the effective date of the Plan and their emergence from these chapter 11 cases will occur on May 1, 2019, which is one day after the

---

[1] Due to the large number of Debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims, noticing, and solicitation agent at https://cases.primeclerk.com/iheartmedia. The location of Debtor iHeartMedia, Inc.'s principal place of business and the Debtors' service address is: 20880 Stone Oak Parkway, San Antonio, Texas 78258.

KE 59563301

expiration of the period where only the Debtors have the right to file a plan of reorganization. Out of an abundance of caution, pursuant to this Motion, the Debtors are seeking an extension of their exclusivity periods in the event that unforeseen issues arise that delay the expected emergence on May 1, 2019. Specifically, the Debtors seek a 31-day extension of the (a) period during which the Debtors have the exclusive right to file a chapter 11 plan (the "<u>Filing Exclusivity Period</u>"), through and including May 31, 2019, and (b) period during which the Debtors have the exclusive right to solicit a plan filed during the Filing Exclusivity Period (the "<u>Solicitation Exclusivity Period</u>," and, together with the Filing Exclusivity Period, the "<u>Exclusivity Periods</u>"), through and including July 30, 2019.

2. On February 5, 2018, the Court entered the *Third Order Extending the Debtors' Exclusivity Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 2633], extending the Debtors' Exclusivity Periods through and including April 30, 2019, for filing a chapter 11 plan, and June 29, 2019, for soliciting votes on a chapter 11 plan, without prejudice to the Debtors' ability to further extend the Exclusivity Periods.[2] By this motion, the Debtors seek a further extension of the Exclusivity Periods.

3. On January 22, 2019, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Fifth Amended Joint Chapter 11 Plan of Reorganization of iHeartMedia, Inc. and its Debtor Affiliates pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2525], confirming the Modified Fifth Amended Joint Chapter 11 Plan of

---

[2] On July 10, 2018, the Court entered the *Order Extending the Debtors' Exclusivity Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 1098] extending the Debtors' Exclusivity Periods through and including November 24, 2018, for filing a chapter 11 plan, and January 23, 2019, for soliciting votes on a chapter 11 plan, without prejudice to the Debtors' ability to further extend the Exclusivity Periods. On November 19, 2018, the Court entered the *Second Order Extending the Debtors' Exclusivity Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 1959] extending the Debtors' Exclusivity Periods through and including February 7, 2019, for filing a chapter 11 plan, and April 8, 2019, for soliciting votes on a chapter 11 plan, without prejudice to the Debtors' ability to further extend the Exclusivity Periods.

Reorganization of iHeartMedia, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 2521] (the "Plan").[3]

4. Following confirmation of the Plan, the Debtors have moved as expeditiously as possible to emerge from these chapter 11 cases and have made substantial progress. However, for reasons outside of the Debtors' control—namely, obtaining required regulatory approvals—and the Debtors' desire to emerge at the beginning of a month for accounting purposes, the Debtors will not be able to emerge from chapter 11 prior to the expiration of the Filing Exclusivity Period. Therefore, the Debtors are seeking this extension solely out of an abundance of caution in the event that unforeseen issues arise prior to emergence. Maintaining the status quo at this critical juncture is of utmost importance as the Debtors and their stakeholders work toward consummating the Plan, which maximizes the value of the Debtors' estates and has the support of every creditor constituency in these chapter 11 cases. A 31-day extension is therefore appropriate to protect the value and consensus that has been built by the Debtors and their stakeholders, and will not prejudice any parties in interest.

    (a)    **The Committee Plan Settlement.**

5. As discussed in detail in the Disclosure Statement Supplement, the Debtors filed an initial version of the Plan to comply with milestones under the Restructuring Support Agreement. After filing the Plan, the Debtors continued to engage with their key creditor and stakeholder groups, including the Committee, in an effort to build consensus around the Debtors' restructuring process, including, among other things, the treatment of general unsecured creditors. After extensive, hard-fought negotiations, the Debtors, the Committee, and the Consenting Stakeholders reached an agreement regarding the treatment of General Unsecured Claims (the "Committee Plan

---

[3] Capitalized terms not defined herein shall have the meanings set forth in the Plan.

Settlement"), the terms of which are embodied in the Plan.

        (b)    **The CCOH Settlement.**

6.    As discussed in detail in the Disclosure Statement and the CCOH Settlement Orders (as defined herein), a key component of the Debtors' Plan was the separation of their business from that of CCOH.[4] On December 17, 2018, after months of extensive, hard-fought negotiations, the Debtors, CCOH, GAMCO, and Norfolk reached agreement on a global settlement of all claims, objections, and other causes of action that have been or could be asserted by or on behalf of CCOH, GAMCO, and/or Norfolk by and among the Debtors, CCOH, GAMCO, certain individual defendants in the GAMCO Litigation and/or the Norfolk Litigation, and the private equity sponsor defendants in the GAMCO Litigation and/or Norfolk Litigation (the "CCOH Settlement"), which includes hundreds of pages of documents memorializing the way the business will operate as separate entities. To implement the terms of the CCOH Settlement, the Debtors, CCOH, and GAMCO sought and received preliminary Court approval of the CCOH Settlement.[5] On January 23, 2019, the District Court for the Southern District of Texas certified a settlement class of minority shareholders of CCOH's Class A common shares on a final basis, designated GAMCO as class representative, and approved the CCOH Settlement [Docket No. 2533].

7.    The CCOH Settlement allows the Debtors to clear one of the final hurdles in these chapter 11 cases. Since confirmation of the Plan, the Debtors, CCOH, and their respective advisors have been working assiduously to implement and finalize the terms and of documentation of the

---

[4]   *See* Disclosure Statement, Art. VII.P.

[5]   *See Order (I) Directing the Application of Bankruptcy Rules 7023 and 7023.1, (II) Preliminarily Approving the Settlement, (III) Approving the Retention of Prime Clerk LLC as Notice Administrator, (IV) Approving the Form and Manner of Notice, (V) Scheduling a Fairness Hearing to Consider Final Approval of the Settlement as Part of Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 2219] and *Order (I) Directing the Application of Bankruptcy Rules 7023 and 7023.1, (II) Certifying a Class, Designating a Class Representative, and Appointing Class Counsel for Purposes of Settlement, and (III) Granting Related Relief* [Docket No. 2221] (together, the "CCOH Settlement Orders").

CCOH Settlement, which ensures that CCOH is adequately capitalized following the separation and preserves the value of minority shareholders' equity investment.

(c) **The Legacy Noteholders' Settlement.**

8. Heading into the confirmation hearings, the only economic-stakeholder that continued to object to the Plan was Wilmington Savings Fund Society, FSB, as successor indenture trustee (the "Legacy Notes Trustee") for the 2018 Legacy Notes and the 2027 Legacy Notes (together, the "Legacy Notes"). Following extensive, hard-fought negotiations and the filing of numerous adversary proceedings, the Debtors and the Legacy Notes Trustee reached a settlement (the "Legacy Notes Settlement"), wherein certain modifications were made to the Plan that increased recoveries for the Holders of Legacy Notes and resolved pending litigation involving the Legacy Notes Trustee.[6] As a result of the Legacy Notes Settlement, Holders of Legacy Notes will receive an additional 0.2% of equity in Reorganized iHeart and the Debtors were able to gain their support for the Plan.

(d) **Continued Progress Toward Emergence Following Confirmation.**

9. Since Plan confirmation, the Debtors have continued to work with their stakeholders to consummate the Plan. Significant progress has been made, and the Debtors expect to emerge from chapter 11 on May 1, 2019. This progress includes, among other things,: (a) finalizing the separation documents and terms of the CCOH Settlement; (b) finalizing the documents effectuating the preferred stock transactions; (c) drafting the application to list iHeart Class A Common Stock on a public exchange; (d) drafting and filing the Form S-4 with the Securities and Exchange Commission; (e) drafting and finalizing the New ABL Credit Agreement, the New Term Loan Credit Agreement, and the New Unsecured Notes and the New Secured Notes

---

[6] *See Legacy Notes Settlement Term Sheet* [Docket No. 2476].

indentures; and (f) coordinating with various brokerages regarding noncash distributions.

10. The Debtors' have built substantial consensus in these chapter 11 cases, which has allowed them to focus their efforts on maximizing the value of their estates. This remarkable consensus has been achieved against the backdrop of large, complex chapter 11 cases involving billions of dollars of funded debt obligations, global operations, thousands of employees, and a diverse set of stakeholder constituencies. These achievements signify the Debtors' continued efforts to maximize the value of their estates and conclude these proceedings in a comprehensive and final manner. Through these efforts, the Debtors have confirmed the Plan and are on the verge of a significant accomplishment—emergence from chapter 11. The Debtors are confident that the Plan will unlock substantial value for the benefit of all their stakeholders.

11. Accordingly, given the facts and circumstances of these chapter 11 cases and the standards set forth by applicable law, the Debtors believe they meet the standard for the extension of the Exclusivity Periods requested herein.

**Relief Requested**

12. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), extending the Exclusivity Periods by 31 days.

**Jurisdiction and Venue**

13. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

14. Venue is permissible pursuant to 28 U.S.C. §§ 1408 and 1409.

15. The statutory basis for the relief requested herein is section 1121 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

**Basis for Relief**

16. Section 1121(b) of the Bankruptcy Code establishes an initial period of 120 days after the commencement of a chapter 11 case during which only a debtor may file a plan and an additional 60-day period during which only the debtor may solicit votes for a plan, both of which are subject to extension through motion practice. Currently, the Filing Exclusivity Period will expire on April 30, 2019, and the Solicitation Exclusivity Period will expire on June 29, 2019. Although the Plan has been confirmed, the Debtors believe it is prudent to seek an extension of the Exclusivity Periods out of an abundance of caution in order to preserve their exclusive ability to file and solicit a new chapter 11 plan should unforeseen issues arise with respect to consummating the Plan.

17. Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause." Although the Bankruptcy Code does not define "cause," bankruptcy courts have discretion to extend exclusivity to promote the orderly, consensual, and successful reorganization of a debtor's affairs. *See In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) (noting that the meaning of "cause" under section 1121 should be viewed in context of the Bankruptcy Code's goal of fostering reorganization); *In re Mirant Corp.*, No. 4-04-CV-476-A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) (noting that an extension of exclusivity is typically granted where "the debtor has shown substantial progress toward reorganization").

7

18. Courts often use the following factors in determining whether "cause" exists to extend a debtor's exclusive plan filing period:

    (a)    the size and complexity of the case;

    (b)    the need for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

    (c)    whether the debtor has made progress in negotiations with its creditors;

    (d)    the existence of good faith progress toward reorganization;

    (e)    whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands;

    (f)    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    (g)    the fact that the debtor is paying its bills as they become due;

    (h)    the amount of time which has elapsed in the case; and/or

    (i)    whether an unresolved contingency exists.

*See, e.g.*, *In re New Millennium Mgmt., LLC*, No. 13-35719 (LZP), 2014 WL 792115, at \*6 (Bankr. S.D. Tex. Feb. 25, 2014) (listing factors relevant to whether "cause" exists to extend exclusivity periods) (citing *In re GMG Cap. Partners III, L.P.*, 503 B.R. 596 (Bankr. S.D.N.Y. 2014)); *see also In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (denying motion to terminate exclusivity based on factors for cause).

19. Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods. *See, e.g.*, *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (listing all nine factors later set forth in *Adelphia* but relying on only four as relevant in determining whether there was "cause" to extend exclusivity); *In re Interco, Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992) (four factors showed that bondholders' committee failed to show cause to terminate debtors' exclusivity).

20. The Debtors assert that, given the facts and circumstances of these chapter 11 cases and the broad consensus already achieved, the requested 32-day extension is warranted. In general, large, complex chapter 11 cases take substantial time to reach confirmation and to become effective. *See, e.g.*, *Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. May 1, 2015) (granting third extension of approximately 129 days for a total 18-month exclusive period); *In re Specialty Products Holding Corp.*, No. 10-11780 (JFK) (Bankr. D. Del. Nov. 15, 2011) (granting third extension of approximately 60 days for total 18-month maximum exclusive period); *In re Frontier Airlines Holdings, Inc.*, No. 08-11298 (RDD) (Bankr. S.D.N.Y. May 20, 2009) (granting third extension of approximately 125 days for total maximum exclusive period); *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. July 20, 2009) (granting an extension for the total 18-month maximum exclusive period); *In re Dana Corp.*, No. 06-10354 (BRL) (Bankr. S.D.N.Y. Dec. 19, 2006) (same); *In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. Dec. 6, 2006) (same); *In re Edison Mission Energy*, No. 12-49219 (JPC) (Bankr. N.D. Ill. Oct. 24, 2013) (same); *In re Mirant Corp.*, No. 03-46591 (DML) (Bankr. N.D. Tex. May 10, 2004) (same). Accordingly, a 32-day extension is warranted.

21. As set forth herein, the Debtors have used their time in chapter 11 productively and efficiently and continue to work in good faith with their stakeholders to emerge from chapter 11 cases in an expedient manner. Accordingly, the Debtors submit that sufficient "cause" exists pursuant to section 1121(d) of the Bankruptcy Code to extend the Exclusivity Periods as provided herein. As set forth below, each of the relevant factors weighs in favor of an extension of the Exclusivity Periods.

## I. The Debtors' Chapter 11 Cases Are Large and Complex.

22. The wide scope of the Debtors' operations and size of their capital structure— the largest of any company (by funded debt) to seek chapter 11 protection in 2018—meant the

9

Debtors were required to navigate a number of complex issues during these chapter 11 process. As of the Petition Date, the Debtors had approximately $16.2 billion of outstanding funded-debt obligations, consisting of obligations under an ABL Credit Agreement, a Term Loan Credit Agreement with two tranches of term loans, multiple issuances of Priority Guarantee Notes, 2021 Notes, and Legacy Notes. The Debtors also have obligations to thousands of vendors, more than 12,000 employees, government agencies, and contractual counterparties.[7] As discussed herein, the Debtors have made significant progress towards emergence.

23. Courts have acknowledged that the size and complexity of a debtor's case alone may provide cause for extending a debtor's exclusivity periods. *See Express One*, 194 B.R. at 100 (approving the debtor's third exclusivity extension and noting that "the traditional ground for cause is the large size of the debtor and the concomitant difficult in formulating a plan of reorganization"). Certainly, the size and complexity of these chapter 11 cases alone provides sufficient cause for the Court to extend the Exclusivity Periods.

## II. The Debtors Have Negotiated a Reorganization With All of the Participating Creditors and Economic Stakeholders and have Confirmed Their Plan.

24. Leading up to and since the Petition Date, the Debtors have made substantial progress in negotiating with their stakeholders and administering these chapter 11 cases, which warrants an extension of the Exclusivity Periods, including:

(a) ***Entering into the Restructuring Support Agreement***. The Debtors commenced these chapter 11 cases with substantial stakeholder support for a comprehensive restructuring. This support is embodied in the Restructuring Support Agreement, which provided the foundation for the Plan.

(b) ***Defending the Legacy Noteholders' Litigation.*** On March 21, 2018, the Legacy Notes Trustee, filed the Springing Lien Adversary Proceeding, which asserted that Holders of Legacy Notes were entitled to be secured

---

[7] *See Disclosure Statement,* Art. V.

10

"equally and ratably" on certain properties with the PGN Holders. The Debtors filed a motion to dismiss the complaint, and on May 7, the Court heard arguments on the Debtors' motion (and the Motion to Dismiss of the Senior Creditors) and requested further briefing on the matter. Additionally, the Debtors filed their answer on June 11, 2018. Oral arguments on pre-trial briefs filed in the Legacy Noteholders' litigation were held on October 18, 2018, and the trial was conducted on October 24, 2018. On January 15, 2019, the Court issued a ruling in favor of the Debtors and senior creditors, holding that the springing lien in the PGN Indenture had not been triggered [Docket No. 263]. In addition, on October 9, 2018, the Legacy Notes Trustee filed a second adversary proceeding alleging a number of purported wrongs and seeking certain equitable relief, including equitable subordination of interests held by, and the designation of votes cast by, certain shareholders and Debtor Clear Channel Holdings, Inc. [Docket No. 1598]. Through the second adversary complaint, the Legacy Notes Trustee sought to remedy harms that it allegedly suffered from the shareholders' breaches of fiduciary duties.

(c) ***Obtaining Critical Financial and Operational Relief***. The Debtors stabilized their business operations through various forms of operational first and second-day relief. This relief included, among other things, authority to continue to use cash collateral, pay employees and talent, continue customer programs, and continue to use their cash management system. On April 12, 2018, the Court granted final approval of the Debtors' use of Cash Collateral [Docket No. 452], which, along with the debtor in possession financing [Docket No. 745], has provided the liquidity needed to fund the administration of these chapter 11 cases. Additionally, the debtor in possession financing facility refinanced the prepetition ABL facility, resulting in significant cost savings to the Debtors' estates.

(d) ***The Disclosure Statement and confirming the Chapter 11 Plan.*** The Debtors solicited input from parties in interest with respect to both the Disclosure Statement, the Disclosure Statement Supplement, and the Plan. Such efforts culminated with the confirmation of the Plan on January 22, 2019. The Debtors' substantial efforts in working with their creditors and administering these chapter 11 cases to this point supports the extension of the Exclusivity Periods while the Debtors and their stakeholders work toward emergence.

(e) ***Obtaining the Committee's Support for the Plan.*** The Debtors reached agreement with the Committee regarding the terms of the Committee Plan Settlement, which are incorporated into the Plan. The Committee Plan Settlement also resolves the Committee's Standing Motion and the Disputed ABL Claims Objection.

(f) ***Filing FCC Long Form Applications***. On October 9, 2018, the Debtors took the crucial step of filing their FCC Long Form Application, which

begins the regulatory approval process for assignment of the Debtors' FCC licenses necessary for the Debtors to emerge from chapter 11.

(g) ***Negotiating and Implementing the CCOH Settlement.*** After months of arms'-length, hard fought negotiations with various parties, the Debtors reached a settlement [Docket Nos. 2111, 2114] to effectuate the separation contemplated by the Plan and Disclosure Statement. The CCOH Settlement is embodied in the Plan, and the Debtors, CCOH, and their respective advisors are working toward implementing the terms thereof.

(h) ***Soliciting Votes on the Plan.*** Pursuant to the Disclosure Statement Orders, Prime Clerk solicited and tabulated ballots submitted by Holders entitled to vote on the Plan. Approximately 90 percent of voting creditors and shareholders voted to accept the Plan [Docket Nos. 2116, 2246].

(i) ***Negotiating the Legacy Notes Settlement.*** After months of arms'-length, hard fought negotiations and numerous adversary proceedings, the Debtors reached a settlement with the Legacy Notes Trustee and the Holders of Legacy Notes, which will provide such Holders an additional 0.2% of equity in Reorganized iHeart.

25. The Debtors' substantial progress in working with their stakeholders and administering these chapter 11 cases to this point supports the extension of the Exclusivity Periods. *See In re Mirant Corp.*, 2004 WL 2250986, at *2 (noting that an extension of exclusivity is typically granted where "the debtor has shown substantial progress toward reorganization").

### III. The Debtors Are Not Pressuring Creditors by Requesting an Extension of the Exclusive Periods.

26. The Debtors are not seeking an extension of the Exclusivity Periods to pressure or prejudice any of their stakeholders. The Plan, as confirmed, enjoys the broad support of every organized group of the Debtors' economic stakeholders, including the Senior Creditors, the 2021 Noteholder Group, CCOH, the Committee, the Holders of Legacy Notes, and the Legacy Notes Trustee. Accordingly, the Debtors are not seeking an extension of their Exclusivity Periods to pressure their creditors or other parties in interest.

### IV. The Debtors Are Paying Their Bills as They Come Due.

27. The Debtors have paid their postpetition debts in the ordinary course of business or

12

as otherwise provided by Court order, and have secured final approval for their use of Cash Collateral and debtor-in-possession financing. The Debtors will continue to pay their bills in the ordinary course as they become due and owing.

## V. An Extension of the Exclusivity Periods Is in the Best Interest of All Parties in Interest.

28. The Debtors seek to maintain exclusivity so parties with competing interests do not impede the Debtors' pursuit of emergence from these chapter 11 cases. Extending the Exclusivity Periods benefits all parties in interest by preventing the drain on time and resources that inevitably occurs when multiple parties with potentially diverging interests vie for the consideration of their own respective plans. All stakeholders benefit from continued stability and predictability that a central process provides, which can only occur while the Debtors remain the sole plan proponents. Moreover, even if the Court approves an extension of the Exclusivity Periods, nothing prevents parties in interest from later arguing to the Court that cause supports termination of the Debtors' exclusivity should such cause arise. Accordingly, an extension of the Exclusivity Periods is in the best interest of the Debtors' estates, their creditors, and all other parties in interest.

29. An objective analysis of the relevant factors demonstrates that the Debtors are doing everything that they should be doing as chapter 11 debtors to facilitate a successful conclusion to these complex chapter 11 cases. Accordingly, the Debtors respectfully submit that sufficient cause exists to extend the Exclusivity Periods as provided herein. Courts in this district have granted relief similar to that requested herein. *See, e.g.*, *In re EXCO Resources, Inc.*, No. 18-30155 (MI) (Bankr. S.D. Tex. Aug. 8, 2018) (granting second extension of exclusive filing period of approximately 2 months); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. Apr. 9, 2018) (granting second extension of exclusive filing period of

approximately 8 months for a total 18-month exclusive filing period); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. Feb. 8, 2017) (granting second extension of exclusive filing period of approximately 10 months for a total 18-month exclusive filing period); *In re Sherwin Alumina Co.*, LLC, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Aug. 23, 2016) (granting second extension of exclusive filing period of approximately 90 days for total 12-month exclusive filing period); *In re UGHS Senior Living, Inc.*, No. 15-80399 (LZP) (Bankr. S.D. Tex. May 23, 2016) (granting second extension of exclusive filing period for total 9-month exclusive filing period).

## Notice

30. Notice of the hearing on the relief requested in the Motion has been provided by the Debtors in accordance and compliance with Bankruptcy Rule 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances. Without limiting the foregoing, due notice was afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties in interest, including: (a) the U.S. Trustee; (b) the Committee; (c) the agent for the Debtors' receivables based credit facility; (d) the agent for the Debtors' term loan credit facility; (e) the indenture trustees for the Debtors' priority guarantee notes, 14.0% senior notes due 2021, 6.875% senior notes due 2018, and 7.25% senior notes due 2027; (f) counsel to an ad hoc group of lenders under the Debtors' term loan credit facility and priority guarantee noteholders; (g) counsel to an ad hoc group of lenders under the Debtors' term loan credit facility; (h) counsel to an ad hoc group of holders of 6.875% senior notes due 2018 and 7.25% senior notes due 2027; (i) counsel to an ad hoc group of holders of 14.0% senior notes due 2021; (j) the Office of the United States Attorney for the Southern District of Texas; (k) the state attorneys general for states in which the Debtors conduct business; (*l*) the Internal Revenue Service; (m) the Securities and Exchange Commission; and (n) any party that has requested notice pursuant to Bankruptcy Rule

2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
March 26, 2019

/s/ *Matthew D. Cavenaugh*

| | |
|---|---|
| Elizabeth Freeman (TX Bar No. 24009222) | James H.M. Sprayregen, P.C. |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | Anup Sathy, P.C. (admitted *pro hac vice*) |
| **JACKSON WALKER L.L.P.** | Brian D. Wolfe (admitted *pro hac vice*) |
| 1401 McKinney Street, Suite 1900 | William A. Guerrieri (admitted *pro hac vice*) |
| Houston, Texas 77010 | Benjamin M. Rhode (admitted *pro hac vice*) |
| Telephone: (713) 752-4200 | **KIRKLAND & ELLIS LLP** |
| Facsimile: (713) 752-4221 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Email: ptomasco@jw.com | 300 North LaSalle Street |
| efreeman@jw.com | Chicago, Illinois 60654 |
| mcavenaugh@jw.com | Telephone: (312) 862-2000 |
| | Facsimile: (312) 862-2200 |
| | Email: james.sprayregen@kirkland.com |
| | anup.sathy@kirkland.com |
| | brian.wolfe@kirkland.com |
| | will.guerrieri@kirkland.com |
| | benjamin.rhode@kirkland.com |

*Co-Counsel to the Debtors*
*and Debtors in Possession*

-and-

Christopher Marcus, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: christopher.marcus@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

## Certificate of Service

       I certify that on March 26, 2019, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

       */s/ Matthew D. Cavenaugh*
       Matthew D. Cavenaugh