

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
05/28/2019

| | | |
|---|---|---|
| IN RE: | § | |
| **IHEARTMEDIA, INC.,** *et al* | § | **CASE NO: 18-31274** |
| | § | |
| **Debtors** | § | **Jointly Administered Order** |
| | § | |
| | § | **CHAPTER 11** |

### MEMORANDUM OPINION

MGM Grand Hotel, LLC filed a motion seeking relief from the automatic stay under 11 U.S.C. § 362(d).  (ECF no. 2363).  MGM's motion for relief from the stay is entitled a "Motion to Lift Stay to Proceed Against Insurance Proceeds."  If that were the actual relief sought, MGM might prevail.  However, as MGM makes clear in its opening paragraph, it seeks "to proceed with third party claims against Debtor Clear Channel Broadcasting, Inc. ("Clear Channel") related to a personal injury claim of Peter Walker."  (ECF No. 2363 at 2).

The insurance policy in this case would require that Clear Channel pay up to a $3,000,000.00 deductible.  For the reasons set forth below, the motion is denied.

### Background

In 2013, Clear Channel held the iHeartRadio Music Festival at the MGM Grand Arena in Las Vegas, Nevada.  (ECF No. 2363 at 2).  During this time, Clear Channel held a General Liability Insurance Policy (the "Insurance Policy") with Insurance Company of the State of Pennsylvania (the "Insurer").  (ECF No. 2554 at 3).  The Insurance Policy contained a per incident limit of $5,000,000.00 and a $3,000,000.00 deductible.  If the insurer paid an insured claim , Clear Channel was obligated to reimburse the Insurer for up to the amount of the $3,000,000 deductible.  (ECF No. 2554 at 3).

On September 18, 2013, an MGM employee allegedly dropped a clamp, which fell 30 feet and struck Peter Walker on the head, causing serious injury.  (ECF No. 2554 at 3).  Walker filed suit against MGM in Nevada state court on May 28, 2015, alleging negligence, vicarious liability, and negligent hiring, training, supervision, and retention.  He seeks $10,000,000.00 in damages.  (ECF No. 2554 at 3).  Walker's suit remains unliquidated and is currently pending trial in Nevada state court.  (ECF No. 2363 at 2).  MGM then asserted a third-party complaint against Clear Channel on July 20, 2018, in order to obtain a judgment that Clear Channel was obligated to indemnify and pay MGM's defense costs under its Insurance Policy.  (ECF No. 2363 at 2).

Clear Channel and several other iHeart affiliates filed chapter 11 bankruptcy on March 14, 2018.  (ECF No. 2554 at 5).  MGM filed a motion seeking relief from the automatic stay pursuant to § 362(d) on January 7, 2019.  (ECF No. 2363).  MGM claims that modifying the automatic stay would not financially prejudice Clear Channel because they seek only to proceed against the Insurance Policy and would not interfere with an effective reorganization.  (ECF No. 2363 at 4).  Clear Channel disputes MGM's claims, arguing that its liability for a $3,000,000.00 deductible under the Insurance Policy constitutes prejudice and that MGM failed to timely file a proof of claim prior to the bar date, rendering its claims unenforceable.  (ECF No. 2554 at 6–7).

The Court confirmed Clear Channel's chapter 11 Plan on January 22, 2019, which became effective on May 1, 2019.  (ECF Nos. 2525, 3298).  Article V, Section G of the Plan treats all insurance policies as executory contracts, which were assumed under the Plan, including the Insurance Policy at issue in this motion.  (ECF No. 2521 at 63).

The Court held an initial hearing on MGM's motion on February 2, 2019, and ordered the parties to confer regarding the details of the Insurance Policy.  (ECF No. 2686 at 49).  A second

hearing was held on February 19, 2019.  At the conclusion of the second hearing, the Court took MGM's motion under advisement pending further briefing from the parties regarding what effect the Insurance Policy deductible had on MGM's requested relief.  (ECF No. 2752 at 35).

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).  Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Analysis

### *Failure to File a Proof of Claim*

Clear Channel first contends that MGM's failure to file a proof of claim prior to the claims bar date is fatal to its motion because "MGM will not be able to enforce any judgment awarded . . . against the [bankruptcy estate]."  At the outset, is important to distinguish between Clear Channel's right to indemnity via the insurance proceeds and a direct action against the insurance proceeds themselves.  The proceeds of the Insurance Policy are available to cover losses suffered by Clear Channel.  However, a prerequisite to this is a determination that Clear Channel bears liability.  MGM's failure to file a proof of claim may preclude it from obtaining this initial liability determination against Clear Channel.  Consequently, there might be no proceeds for MGM to recover at all.  As explained in greater detail below, in this Circuit, MGM could proceed with a lawsuit against Clear Channel without filing a proof of claim, but only if there was no negative financial impact on the debtor.  *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th Cir. 1993).

Under 11 U.S.C. § 541(a), property of the bankruptcy estate consists of "all property, wherever located and by whomever held" at the commencement of the case. This broad provision includes insurance policies. *See In re Davis*, 730 F.2d 176, 184 (5th Cir. 1984). However, the Fifth Circuit has distinguished an insurance policy, which is property of the estate, from liability proceeds, which are not property of the estate if "the debtor has no legally cognizable claim to the insurance proceeds." *In re Edgeworth*, 993 F.2d at 56.

MGM's motion states that it seeks to "procced against Clear Channel's liability insurance." (ECF No. 2363 at 4). The terms of the Insurance Policy require that the insurer pay claimants "all sums obligated up to the $5,000,000.00 limit." (*See* November 12, 2012 Endorsement at 1). In this case, the insurance proceeds are not part of the bankruptcy estate because Clear Channel cannot assert a legal claim to them. Accordingly, MGM's failure to file a proof of claim by the claims bar date might not preclude its attempt collect on the insurance proceeds, which are outside of the bankruptcy estate. *Id.* However, that is only true if there is not a cognizable negative financial impact on the Debtor. *Id*.

Although the proceeds of the Insurance Policy are outside the bankruptcy estate, the Insurance Policy also contains a deductible that requires Clear Channel to reimburse the insurer for amounts paid up to the $3,000,000.00 deductible limit. (November 12, 2012 Endorsement at 1, 3). MGM claims that because the Debtors assumed the Insurance Policy in their Plan of reorganization, along with the deductible, "there is no impact on the bankruptcy estate" and the stay should be lifted. While the Debtors assumed their obligations under the insurance policy, they will not have to pay any of the $3,000,000.00 deductible unless Clear Channel is first held liable in MGM's lawsuit.

In *Edgeworth*, a claimant attempted to collect the proceeds of a physician's malpractice insurance. 993 F.2d at 53. The physician filed chapter 7 bankruptcy and received a discharge. *Id*. The bankruptcy court enjoined the claimant from collecting the proceeds of the malpractice insurance due to the discharge injunction. *Id.* On appeal, the Fifth Circuit held that the discharge injunction "does not affect the liability of insurers and does not prevent establishing [the insurers'] liability by proceeding against a discharged debtor." *Id.* at 54. The Fifth Circuit reasoned that the discharge injunction prevented recovery of debts based on a debtor's *personal* liability. *Id.* In *Edgeworth*, the claimant sought only to recover against the insurer, which did not implicate the debtor's financial liability. *Id.* Thus, the Fifth Circuit distinguished between cases where an insurer bears sole liability; and those in which a debtor is required to "pay the costs of his defense or . . . the insurance company . . . is defending under a reservation of rights." *Id.*

The Insurance Policy's deductible requires that Clear Channel reimburse the Insurer for each claim. (November 12, 2012 Endorsement at 1, 3). Unlike the debtor in *Edgeworth*, who bore no liability on the insurance proceeds, Clear Channel is liable for the $3,000,000.00 deductible on any claim paid under its Insurance Policy. MGM's attempt to collect a claim against the Insurance Policy, would necessarily invoke the reimbursement provisions of the contract. The Insurer will not waive its reimbursement rights. (ECF No. 2686 at 45). Thus, MGM's attempt to collect against the Insurance Policy directly affects the bankruptcy estate, which is barred under either the automatic stay or the discharge injunction. *See* In re *Edgeworth*, 993 F.2d at 54; *see also St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 536 (5th Cir. 2009) (finding a stay violation after an insurer attempted to collect indemnity contributions after paying performance bonds).

*Motion to Lift the Automatic Stay*

Although MGM's attempt to collect on the Insurance Policy proceeds is barred under the automatic stay and discharge injunction, the Bankruptcy Code allows a court to "grant relief from the stay . . . by terminating, annulling, modifying, or conditioning such stay . . . for cause." § 362(d)(1).  Cause, for purposes of relief from the automatic stay, is not defined under the Bankruptcy Code, granting the Court discretion to determine whether cause exists.  *Bonneville Power Admin. v. Mirant Corp. (In re Mirant),* 440 F.3d 238, 253 (5th Cir. 2006) (quoting *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986)).

As the movant, MGM bears the burden of demonstrating that adequate cause exists to lift the stay.  MGM first argues that cause exists because the Insurance Policy was assumed in Clear Channel's confirmed chapter 11 Plan.  (ECF No. 2746 at 3).  To MGM, Clear Channel is estopped from opposing MGM's requested relief from the stay because Clear Channel is bound to abide by the terms of the Insurance Policy it assumed.  (ECF No. 2746 at 3).

As discussed earlier, the Fifth Circuit distinguished between insurance policies which implicate a debtor nominally, and those which impose financial burdens on a debtor.  *In re Edgeworth*, 993 F.2d at 54.  MGM's conclusory statement that the deductible "has nothing to do with whether the insurance proceeds are property of the estate here, or whether they automatic stay should be lifted" misses the point made by the *Edgeworth* Court.  The Insurance Policy imposes a $3,000,000.00 reimbursable deductible on Clear Channel.  (November 12, 2012 Endorsement at 1, 3).  If the Court granted relief and a $5,000,000.00 claim against the insurance proceeds was liquidated, the resulting payment would comprise $2,000,000.00 of insurance proceeds and $3,000,000.00 of Clear Channel's property after the Insurer enforced its right to reimbursement under the deductible. Thus, MGM's third-party suit will directly involve debtor

property under the deductible, distinguishing MGM's requested relief from the relief allowed in *Edgeworth*.

MGM's next argument attempts to distinguish between a Self-Insured Retention ("SIR") policy and Clear Channel's deductible coverage.   An SIR policy predicates an insurer's obligation to pay a claim on a prior payment by the policy holder.  (EFC No. 2781 at 4–5). Conversely, with the deductible policy at issue here, the insurance company pays the entire claim and then seeks reimbursement from the policy holder.  (November 12, 2012 Endorsement at 1, 3).   MGM claims that with a deductible policy, "the insurance company is entitled to an unsecured claim for prepetition claims or an administrative expense priority for post-petition claims." (ECF No. 2781 at 2–3).  The implication of these cases, in MGM's view, is that a deductible policy would require no up-front payment from Clear Channel, leaving the Insurer with an unsecured claim on the Insurer's behalf and no resulting effect on the bankruptcy estate. (ECF No. 2781 at 5).  In support, MGM cites West Virginia and Florida bankruptcy cases, which allowed insurance deductibles as general unsecured claims against debtors.  (ECF No. 2871 at 3).

Even if the Court accepts this premise, it fails to comport with the existing Fifth Circuit precedent described above.   Although MGM characterizes its claim as a claim against the insurance proceeds, that is simply incorrect.  Its claim is against Clear Channel, the insured.  Any claim necessarily invokes the Insurer's right to reimbursement from Clear Channel, whether that payment is required prior to claim payment under an SIR, or as reimbursement under a deductible is irrelevant.  As the Fifth Circuit held in *Edgeworth*, the controlling question is whether the litigation would place the financial burden solely on the insurer or implicate the debtor.  993 F.2d at 54.  The Insurance Policy in this case, with its $3,000,000.00 reimbursable

deductible falls within the latter category, implicating the Debtor's finances.   Accordingly, MGM has failed to carry its burden demonstrating cause for relief from the automatic stay.

*Additional Insured*

In its pleadings and during the hearings, MGM raised the issue of whether it may be considered an additional insured with its own right to coverage under the Insurance Policy.  (See ECF No. 2746 at 3–4).  MGM's assertion of its individual contractual rights under the Insurance Policy is beyond the scope of relief it seeks from the automatic stay.

*Alternative Relief*

MGM has not sought relief in a form that would protect Clear Channel from a financial loss.  The order issued in conjunction with this opinion will not preclude MGM from seeking alternative relief such that MGM—and not Clear Channel—bears the risk of the deductible.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **May 28, 2019.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE